LUIS ACOSTA, INC., peticionaria, *v.* DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, querellante-recurrido.

*Número:* O-82-466      *Resuelto:* 12 de abril de 1983

*Julio M. Rodríguez,* de *Fiddler, González & Rodríguez,* abogado de la peticionaria; *Carmen Monclova Anselmi,* abogada de la parte recurrida.

PER CURIAM: El Departamento de Asuntos del Consumidor ("DACO") impuso una multa a Luis Acosta, Inc. por violar la Sec. 15 de la Ley de Pesas y Medidas, Ley Núm. 145 de 27 de junio de 1968 (23 L.P.R.A. sec. 915).[1] La alegada infracción ocurrió por la distribución de paquetes de arroz de tres libras con un peso inferior al indicado en los mismos. Acosta solicitó la revisión de la decisión administrativa ante el Tribunal Superior, el cual confirmó la decisión de la agencia. Acosta acudió a este foro y alega que la acción de DACO conflige con las disposiciones de la ley federal que exigen que se permitan variaciones en el peso del paquete en aquellos productos de naturaleza higroscópica, es decir, que poseen la característica de absorber o exhalar humedad de acuerdo con las circunstancias del ambiente, con el consiguiente cambio en su peso. Acordamos revisar.

---

[1] Tal disposición decreta:

"Será ilegal vender, ofrecer o exponer para la venta cantidad menor que la indicada para cualquier artículo o servicio. . . ."

Acosta importa el arroz "Cinta Azul" y lo vende a distintas firmas en los mismos paquetes de tres libras en que llega el arroz de Estados Unidos. DACO visitó varios supermercados para verificar el cumplimiento con la Ley de Pesas y Medidas. En un supermercado que carece de aire acondicionado encontró varios paquetes cuyo peso no coincidía con el indicado en la etiqueta. Las dos muestras de diez paquetes, cada una examinada por el inspector, revelaron variaciones de 1/16 a ¼ de onza de menos en las distintas bolsas. En una de ellas, dos paquetes tenían ½ onza y 7/16 de onza de más. El error promedio fue menor a cero en ambas ocasiones. DACO impuso la multa por considerar que la variación promedio entre el peso de los paquetes examinados y el peso indicado en la etiqueta de los mismos debe ser cero.

Consideremos la relación entre la legislación federal y la estatal. La primera ley federal a examinar es la Ley de Alimentos, Drogas y Cosméticos (la "F.D.C.A."), 52 Stat. 1040 y ss., 21 U.S.C.A. sec. 301 y ss.

■ La F.D.C.A. se aplica expresamente a Puerto Rico en igualdad de condiciones que a cualquier estado de la Unión Americana. 21 U.S.C.A. sec. 321(a). El arroz es un alimento dentro de los términos de la ley. *Ibíd.*, apartado (f). La F.D.C.A. prohíbe la rotulación indebida de alimentos en el comercio interestatal. 21 U.S.C.A. sec. 331(b). Sobre tal rotulación indebida, la ley dispone:

A food shall be deemed to be misbranded—

. . . . . . . .

(e) If in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: *Provided,* That under clause (2) of this subsection reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary. 21 U.S.C.A. sec. 343(e).

Al amparo de esta ley se ha aprobado un reglamento federal en el que se expresa:

> The declaration of net quantity of contents shall express an accurate statement of the quantity of contents of the package. Reasonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large. 21 C.F.R. sec. 101.105(q), 42 Fed. Reg. 14308 (15 de marzo de 1977), según enmendado en 42 Fed. Reg. 15673 (22 de marzo de 1977).

El arroz, por ser precisamente un alimento bajo la F.D.C.A., está también sujeto a las disposiciones de la Ley Federal sobre Envase y Rotulación (F.P.L.A.), 80 Stat. 1296 y ss., 15 U.S.C.A. sec. 1452 y ss. La F.P.L.A. expresa que sus disposiciones no invalidan o sustituyen las de la F.D.C.A. El Tribunal Supremo de Estados Unidos ha resuelto que bajo la F.P.L.A. no se pueden imponer sanciones penales o civiles por variaciones razonables permisibles bajo la F.D.C.A. *Jones* v. *Rath Packing Co.*, 430 U.S. 519, 537–538 (1977).

Las leyes federales no han ocupado el campo. *Jones,* supra, págs. 525, 540–541. A menos que exista el propósito manifiesto del Congreso de ocupar un campo históricamente sujeto al poder legislativo estatal, no se ha de presumir tal hecho. *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). La situación en el caso de autos sobre esta cuestión es sencilla. La propia F.P.L.A. provee que el Congreso intenta validar únicamente aquellas leyes estatales que sean menos exigentes que el estatuto federal y sus reglamentos. 15 U.S.C.A. sec. 1461.

La absorción o no por el gobierno federal de una zona de acción legislativa estatal es, sin embargo, tan solo una faceta del problema de definir la relación entre los integrantes de una federación o de una asociación. Los estatutos federales que no excluyen toda legislación estatal en

un área pueden de todos modos anular los estatutos de otra índole que conflijan con ellos. Art. VI de la Constitución de Estados Unidos. Desde esta segunda perspectiva, el análisis se concentra en precisar si la ley estatal frustra el propósito del Congreso. *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941); *Florida Avocado Growers* v. *Paul*, 373 U.S. 132 (1963).

*Jones*, supra, se enfrentó a esta última tarea en un contexto análogo al presente. En California existía un estatuto que penalizaba la venta de productos si el peso *promedio* de los paquetes o envases era menor al rotulado. Las autoridades administrativas en California les impusieron sanciones a ciertas compañías por ofrecer para la venta harina y tocineta, ambos de naturaleza higroscópica. El Tribunal Supremo de Estados Unidos resolvió que no había ocurrido una ocupación del campo, pero que la legislación californiana obstaculizaba el cumplimiento de la federal. La Corte expresó que la negativa del Estado a permitir variaciones razonables debido a la pérdida de humedad y al exigir en cambio un peso promedio de cero, representaba una carga inaceptable para el comercio interestatal.[2] Los manufactureros que distribuyesen sus productos en aquellos estados que hubiesen adoptado el patrón federal no tendrían que preocuparse en esencia por el fenómeno higroscópico, conforme a la reglamentación más reciente. Los otros manufactureros tendrían que hacerlo. El fabricante para los mercados nacionales tendría siempre que empacar cantidades mayores para zonas con índices de humedad muy diferentes.

En Puerto Rico existe una situación curiosa. La Sec. 15 de la Ley de Pesas y Medidas, 23 L.P.R.A. sec. 915, no permite de su faz un peso menor que el rotulado. DACO no ha adoptado reglamento alguno sobre el problema que nos

[2] Al utilizar el peso promedio como criterio para determinar si se cumple con la ley, no se toma en consideración la pérdida de peso por razón de la naturaleza higroscópica del grano. Nótese que este fenómeno afecta todos los paquetes de la muestra.

ocupa. Según consta de autos, lo que hace la agencia es utilizar, tan solo a modo de guía, un antiguo manual del Departamento de Comercio, *National Bureau of Standards, Handbook 67*, publicado el 20 de marzo de 1959. La acción de DACO en este caso se funda en ese manual y se asemeja al método californiano.

En *Méndez & Co., Inc.* v. *D.A.C.O.*, 104 D.P.R. 707 (1976), nos expresamos sobre el fenómeno higroscópico. Rechazamos allí, como aquí también, todo ataque a la inconstitucionalidad de la Sec. 15 de la Ley de Pesas y Medidas. Al igual que en *Jones*, supra, resuelto con posterioridad a *Méndez*, añadimos que el Congreso no ha ocupado el campo. Puerto Rico retiene su facultad de legislación sobre pesas y medidas, la cual no es ciertamente menor que la de un estado. Nuestra tarea consiste tan solo en determinar si en la situación presente existe la posibilidad de un conflicto entre la legislación federal y la puertorriqueña, que represente una carga impermisible al comercio interestatal.

El caso de autos contiene cuatro elementos distintos a los hechos que analizamos en *Méndez*, supra. En *Méndez* el producto concernido, habichuelas, fue empacado en Puerto Rico para su venta aquí. En el pleito actual, el empacado ocurrió en Estados Unidos. Al igual que en *Jones*, supra, estaba envuelta más de una jurisdicción. En segundo término, en *Méndez* no se penalizó, como aquí, sobrepeso alguno.[3] El sobrepeso original, además, es lo que permite compensar el fenómeno higroscópico. En tercer lugar, los márgenes de error presentados en *Méndez* eran en su mayoría irrazonables. En el caso de autos, aun utilizando la propia tabla de razonabilidad empleada por DACO, la cual

---

[3] Debe advertirse que nuestra ley solo prohíbe la venta de una cantidad menor que la indicada. DACO carece de autoridad en ley para penalizar la venta o el ofrecimiento para la venta de artículos contentivos de una cantidad mayor que la rotulada. El texto de la Sec. 15 de la Ley de Pesas y Medidas —véase el escolio 1 de esta opinión— es cristalino.

permite en paquetes de tres libras errores menores hasta de 6/16 de onza, no se violó tal norma. Ningún paquete reveló una deficiencia de peso mayor de 4/16 de onza. Por último, existe en este caso controversia, aunque de reciente cuño, sobre si el arroz pulido es de naturaleza higroscópica. No consta en autos determinación de hecho sobre el particular.

El caso se devolverá a instancia para precisar las propiedades del arroz pulido. De no poseer cualidad higroscópica, se permitirá penalizar tan solo errores de menos. De poseerla, se anulará la multa por razón de que la acción de DACO, en situaciones como la presente, choca con la norma sentada en *Jones.*

*Se devolverá el caso a instancia para procedimientos compatibles con esta opinión.*

El Juez Asociado Señor Negrón García se inhibió y el Juez Asociado Señor Rebollo López concurrió en el resultado, sin opinión.