# 96 DTA 153

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN
PANEL II**

CARLOS DELGADO ROBLES
Recurrido

v.

DEPARTAMENTO DE EDUCACION
Peticionario

Núm. KLCE-96-00796

San Juan, Puerto Rico, a 7 de octubre de 1996

Panel integrado por su presidenta, Juez Alfonso de Cumpiano
y los Jueces Giménez Muñoz y Miranda De Hostos

Miranda De Hostos, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Mediante sentencia dictada en un recurso de revisión judicial por el Tribunal de Primera Instancia, Sala Superior de San Juan, se revocó una resolución emitida por la Junta de Apelaciones del Sistema de Educación Pública (JASEP) y se ordenó la anulación de una amonestación impuesta al recurrido Carlos Delgado Robles.

Inconforme la parte peticionaria Departamento de Educación (Departamento) presentó recurso de *certiorari* donde señaló como único error que incidió el tribunal de instancia al revocar la medida disciplinaria impuesta al recurrido sustituyendo el criterio del foro administrativo por el suyo, en ausencia de prueba o circunstancias que avalen tal determinación judicial.

Evaluado el recurso ante nos y su oposición, se expide el auto de *certiorari* solicitado y se revoca la sentencia dictada por los siguientes fundamentos.

**I**

Los hechos en el presente caso se resumen de la siguiente manera.

Durante el año académico 1993-94 el recurrido se desempeñaba como maestro de español para estudiantes de décimo grado en la Escuela Lorenzo Caballes Gandía del Distrito Escolar de Hatillo. A consecuencia de su interés por la literatura dicha parte orientó a sus alumnos, sin que mediare autorización alguna de parte de las autoridades escolares, a que leyeran y analizaran voluntariamente la novela de la escritora puertorriqueña Olga Nolla titulada La Segunda Hija. Además, preparó una charla para los estudiantes a la cual invitó a la escritora como conferenciante. La actuación del recurrido conllevó que se sustituyera del currículo de español la obra La Llamarada de Enrique Laguerre, por una obra no autorizada.

Para llevar a cabo su cometido, el profesor recurrido requirió la autorización de los padres de los jóvenes para el estudio de la novela. La mayoría de los padres mediante carta contestaron que no tenían ningún problema en que sus hijos la leyeran, pero otros se negaron abiertamente por alegadamente ser esta obra de fuerte contenido sexual.

Según surge de los hechos estipulados por las partes, que la Superintendente de Escuelas, Sra. Irma Muñoz, el 23 de septiembre de 1993, le solicitó mediante misiva al recurrido que suspendiera el estudio de la novela hasta tanto evaluara el Programa de Español. El Director de la Escuela Caballes Gandía, Sr. Israel Rodríguez, como la Secretaria Auxiliar del Programa Regular, Dra. Zoraida Porrata-Doria, le solicitaron también que suspendiera el estudio de la misma hasta que fuera evaluada. A pesar de que hubo tales directrices específicas, el recurrido continuó enseñando la novela.

El Departamento sostuvo que el profesor mantuvo una conducta de insubordinación en contravención a las órdenes dadas por las autoridades escolares de que no sustituyera un material básico de enseñanza por una nueva obra no aprobada. Por dicha acción el Secretario de Educación, le notificó al recurrido mediante comunicación de 1 de agosto de 1994 que lo suspendía de empleo y sueldo para el semestre escolar 94-95. Posteriormente y a petición del recurrido, se reconsideró la sanción y se le impuso una amonestación para ser incluida en su expediente.

El recurrido acudió ante JASEP alegando que al momento de los hechos, el Departamento no contaba con

reglamentación específica que estableciera un procedimiento de consulta por el cual los maestros pudieran solicitar autorización para enseñar nuevos textos de la literatura puertorriqueña. Indicó además, que él había examinado el Documento de Contenido Básico Nivel Secundario, para determinar si la novela La Segunda Hija cumplía con los requisitos allí pautados y que él concluyó que cumplía con los mismos, por lo cual podía darla.

El Departamento de Educación se reiteró en la sanción impuesta y añadió que en la Carta Circular Núm. 18-83-84 (Ap. Pág. 63-98) existía un mecanismo que contemplaba la aprobación previa del Programa de Español como requisito para enseñar nuevas novelas.

El Oficial Examinador de JASEP, concluyó en su informe que el Departamento había actuado conforme a la ley y que el profesor estaba sujeto a cumplir la medida disciplinaria impuesta.

Presentada una moción de reconsideración ante JASEP la cual no fue atendida por la agencia, recurrió en revisión judicial ante Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante sentencia dicho foro expidió el auto de revisión y revocó la amonestación impuesta por alegadamente carecer el Departamento de una directriz clara en el Reglamento que guiara al maestro cuando éste intentara ofrecer un nuevo texto. Añadió que el recurrido gozaba de libertad académica en su salón de clases y que irrazonablemente se le penalizó por ejercer la misma.

De la antedicha determinación recurre ante nos el Departamento, mediante el presente recurso de *certiorari*.

## II

Conforme a los hechos antes expuestos, analicemos las disposiciones legales pertinentes al caso de autos.

La Ley Núm. 68 de 28 de agosto de 1990, conocida como Ley Orgánica del Departamento de Educación, Art. 3.01, 3 L.P.R.A. sec. 393 (Supl. 1996) establece que *"[l]a función principal del maestro del salón de clases es impartir la enseñanza a los alumnos de acuerdo a lo establecido por el sistema de educación pública"*. Los maestros tienen el deber ineludible de acatar las directrices de sus supervisores siempre que éstas estén dentro del marco legal correspondiente. Ley Núm. 115 de 30 de junio de 1965, Art. 3, 18 L.P.R.A. sec. 274-2(d) (Supl. 1996).

Para la fecha de los hechos en controversia existía la Carta Circular Núm. 18-83-84 de 11 de junio de 1984, que determinaba sobre la organización del currículo de español. De una lectura de la misma colegimos, que se autorizaban textos u otros materiales complementarios para enriquecer el currículo, con *"[c]ontenidos afines a otros materiales **aprobados por el Programa de Español.**"* (Enfasis suplido)

El Art. 1 de la Ley Núm. 115, *supra*, 18 L.P.R.A. sec. 274, establece que el Secretario de Educación en casos de insubordinación podrá imponer a un maestro medidas disciplinarias, entre las cuales se encuentran el cancelar o suspender el certificado de maestro por tiempo indeterminado.

El Reglamento de Personal Docente del Departamento de Instrucción Pública, de 27 de enero de 1984, según enmendado, dispone en el Art. 10, Sec. 10.3, que el Secretario tomará medidas correctivas como amonestación verbal o reprimenda escrita, entre otras, por insubordinación cuando la conducta no se ajuste a las normas establecidas.

## III

A la luz de los principios antes expuestos concluimos que el tribunal de instancia incidió al expedir el auto de revisión y revocar la sanción impuesta al recurrido por lo siguiente.

Claramente las leyes y reglamentos precitados facultan al Secretario de Educación para imponer una acción disciplinaria si un maestro incumple con alguno de los deberes allí descritos. Entre los motivos para imponer alguna de las medidas correctivas se encuentra la insubordinación de un maestro al no seguir las directrices de los supervisores cuando éstas son claras y están contempladas en la ley.

Los hechos ante nuestra consideración demuestran que el recurrido alteró el currículo básico de español sustituyendo sin autorización un libro básico aprobado, por una obra nueva sin que ésta fuera aprobada por el Programa de Español según lo dispone la carta circular.

Ante tal conducta, el Departamento de Educación en el ejercicio de su poder de reglamentación y por medio de varios supervisores, recabaron tiempo del recurrido para estudiar la novela propuesta y así determinar si tenía contenidos afines a los otros textos aprobados por el Programa de Español, por lo cual se le ordenó que descontinuara su estudio hasta que fuera debidamente evaluada. No obstante, el recurrido en lugar de suspender su estudio en lo que se evaluaba la novela, desafió la autoridad y prosiguió con su actuación, aun cuando ya se le había ordenado lo contrario por sus supervisores. Debemos señalar que el propio recurrido aceptó que hizo caso omiso a las directrices de los supervisores y prosiguió con la enseñanza de la novela.

## IV

Por los anteriores fundamentos concluimos que la conducta del maestro recurrido fue una de clara insubordinación a las normas vigentes establecidas por el Sistema de Educación Pública, por lo cual procede la sanción impuesta al mismo.

Con respecto a la *"libertad académica"* a que se refiere el foro de instancia, resolvemos que dicho planteamiento es improcedente en la situación de autos.

La controversia en este caso denuncia la actuación unilateral de un maestro al no obedecer el ordenamiento legal y las órdenes claras de sus supervisores. De manera, que lejos de haberse transgredido la libertad académica del profesor recurrido, la determinación del Secretario de Educación fue dirigida a corregir una conducta de insubordinación.

Concluimos conforme a las circunstancias mencionadas que el Secretario de Educación actuó dentro de la autoridad que le confiere la ley y los reglamentos del Departamento, por lo cual no abusó de su discreción ni actuó en forma irrazonable o arbitraria contra el recurrido al imponerle una sanción de amonestación ante la clara conducta de insubordinación. *Murphy Bernabe v. Tribunal Supremo,* 103 D.P.R. 692, 699 (1975).

Es norma reconocida que las conclusiones de los organismos administrativos merecen gran consideración y respeto y tienen a su favor una presunción de regularidad, por lo cual los tribunales deben ser cautelosos al intervenir con las mismas. *Fuertes v. A.R.P.E.,* opinión de 17 de diciembre de 1993, **93 J.T.S. 165,** pág. 11385; *Méndez & Co., Inc. v. DACO,* 104 D.P.R. 707, 713 (1976).

## V

Por los anteriores fundamentos se expide el auto de *certiorari* solicitado y se revoca la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General