En el Tribunal Supremo de Puerto Rico

| Administración de Terrenos Peticionaria V. Unión Independiente de Empleados de la Administración de Terrenos Recurrido | Certiorari 99 TSPR 123 |
|---|---|

Número del Caso: CC-1998-0227

Abogada de la Parte Peticionaria: Lcda. Amelia Fortuño Ruiz

Abogado de la Parte Recurrida: Lcdo. Jaime E. Cruz Alvarez

Agencia Administrativa: Junta de Relaciones del Trabajo

Tribunal de Circuito de Apelaciones: Circuito Regional I San Juan

Juez Ponente: Hon. Giménez Muñoz

Fecha: 7/16/1999

Materia: Revisión de Decisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Terrenos

Peticionaria

        v.

Unión Independiente de Empleados
de Administración de Terrenos        CC-1998-227

    Recurrida


SENTENCIA


San Juan, Puerto Rico, a 16 de julio de 1999.

La peticionaria, Administración de Terrenos de Puerto Rico (en lo sucesivo "la Administración"), recurre ante nos mediante *certiorari*, solicitando que revisemos la resolución dictada por el Tribunal de Circuito de Apelaciones denegando la expedición del recurso de revisión de una decisión emitida por la Junta de Relaciones del Trabajo de Puerto Rico (en lo sucesivo "la Junta"). En esta resolución el tribunal apelativo confirmó la decisión de la Junta a los efectos de incluir el puesto de Secretaria Ejecutiva Gerencial de la Administración en la unidad apropiada de

negociación colectiva representada por la Unión Independiente de Empleados de la Administración (en lo sucesivo "la Unión").

Luego de examinar y analizar los autos, así como los alegatos de las partes, procede revocar la resolución del Tribunal de Circuito de Apelaciones. Concluimos que el puesto de Secretaria Ejecutiva Gerencial debe ser excluido de la unidad apropiada de negociación colectiva representada por la Unión.

I

El 16 de noviembre de 1995, la Unión presentó ante la Junta una petición para la clarificación de unidad apropiada de negociación colectiva representada por dicho grupo laboral. Solicitó que se incluyera un total de cinco puestos en la unidad apropiada, entre los cuales se encontraba el de Secretaria Ejecutiva Gerencial.

Para realizar la correspondiente determinación, la Junta asignó el caso a un jefe examinador, quien comenzó una investigación mediante entrevistas e interrogatorios al personal pertinente, además del estudio de evidencia documental. El 5 de septiembre de 1996, el jefe examinador rindió un informe con su recomendación. En cuanto al puesto de Secretaria Ejecutiva Gerencial, recomendó que debía permanecer excluido de la unidad apropiada, ya que la persona que ocupaba este puesto recibía instrucciones directas del Director de la División de Servicios Generales y tenía acceso inmediato a información gerencial confidencial. Recomendó la inclusión de otros puestos, no pertinentes al caso ante nos, en la unidad apropiada.

En reacción a esta recomendación, tanto la Unión como la Administración presentaron escritos de excepciones. El 17 de octubre de 1996, la Junta, luego de examinar y analizar el informe y los referidos escritos, resolvió la controversia parcialmente en cuanto a algunos de los puestos. En lo concerniente a los puestos de Secretaria Ejecutiva Gerencial y de Oficial de Recursos Humanos I, determinó que un juez administrativo debería presidir una audiencia pública con el objeto de dilucidar las dudas que presentaba el informe rendido por el oficial

examinador y estudiar a fondo la controversia específica en cuanto a estos cargos.

Cumpliendo con la determinación de la Junta, el juez administrativo celebró una audiencia pública y el 28 de mayo de 1997 rindió su informe y recomendación a la Junta. En cuanto al puesto de Secretaria Ejecutiva Gerencial, recomendó que se incluyera en la unidad apropiada objeto de clarificación ya que según éste, la prueba aportada por el patrono no demostró que dicho puesto tuviera acceso a documentos y comunicaciones sobre asuntos de naturaleza laboral.

El 12 de agosto de 1997, la Junta adoptó la recomendación del juez administrativo y emitió decisión y orden incluyendo el puesto de Secretaria Ejecutiva Gerencial en la unidad apropiada de negociación colectiva que representa la Unión.

Oportunamente, la Administración presentó recurso de revisión ante el Tribunal de Circuito de Apelaciones, alegando que la Junta había errado al incluir el puesto en controversia en la unidad apropiada de negociación. El foro apelativo emitió resolución el 30 de enero de 1998 confirmando las actuaciones de la Junta. Fundamentó su determinación en que la decisión administrativa estuvo basada en el récord y que éste tendió a probar que el puesto de Secretaria Ejecutiva Gerencial no está unido a los puestos que formulan política obrero patronal, ni tiene conocimiento de esa política. La Administración solicitó reconsideración de dicha determinación, la cual fue declarada no ha lugar mediante resolución del 23 de febrero de 1998, archivada en autos el 2 de marzo de 1998.

Inconforme, el 1 de abril de 1998 la Administración recurrió ante nos mediante *certiorari*, aduciendo la comisión del siguiente error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar la decisión de la Honorable Junta de Relaciones del Trabajo de incluir el puesto de Secretaria Ejecutiva Gerencial en la unidad apropiada que representa la recurrida a pesar de que la prueba aportada justifica su exclusión toda vez que la empleada tiene acceso a información confidencial relacionada a asuntos obrero patronales por lo que cae dentro de la definición de empleado

confidencial. La decisión de la Junta de Relaciones del Trabajo no está sostenida por evidencia sustancial en el récord.

El 30 de abril de 1998 la Unión presentó su alegato en oposición a que se expidiera el auto de *certiorari*. Examinados tanto el recurso como el alegato en oposición, expedimos mandamiento de *certiorari* el 5 de junio de 1998.

Contando con el favor de la comparecencia de las partes estamos en posición de resolver.

## II

El procedimiento de clarificación de unidad apropiada que rige en la actualidad en nuestra jurisdicción es un calco del mecanismo federal que se utiliza para añadir a una unidad apropiada ciertos empleados que al momento de formularse la petición no forman parte de ésta, pero que debían pertenecer a la misma ya que comparten una misma comunidad de intereses. *Pérez Maldonado* v. *Junta*, 132 D.P.R. 972 (1993); *N.L.R.B.* v. *Magna Corp.*, 734 F. 2d 1057 (1984). Así, la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. §61 *et seq. (1995),* le encomienda a la Junta la determinación de unidad apropiada pero no dispone de un procedimiento para la clarificación de ésta.

En cuanto a este asunto expresamos en *Pérez Maldonado* v. *Junta, supra,* que todo lo relacionado a la clarificación de las unidades apropiadas se ha desarrollado por *fiat* administrativo, sin que la ley lo establezca directa o expresamente.

La jurisprudencia ha identificado principalmente el procedimiento de clarificación de unidad apropiada en cinco situaciones, en algunas de las cuales no es menester consultar a las personas que ocupan los empleos en cuestión, porque se presume que como dichos empleos son iguales a los que están incluidos en la unidad apropiada contratante, todos los empleados comparten el mismo interés en la representación.[1] Asímismo, la doctrina establece que en la determinación de la unidad

---

[1] *N.L.R.B.* v. *Mississippi Power*, 769 F. 2d. 276 (1985).

apropiada, el factor clave es el identificar una comunidad de intereses que comparten los empleados:

> The touchstone of appropriate unit determinations is whether the unit's members have a recognizable community of interest sufficiently distinct from other employees to warrant their inclusion in a single unit. In determining whether the unit petitioned for in a particular case is appropriate, the NLRB has, with court approval, traditionally looked to such factors as homogeneity and distinctness of units, previous bargaining history in the company and the industry, similarity of jobs and functions performed by employees, relationship of the proposed unit to the employer's organization, whether the employees are interchanged with other employees, the extent of common supervision, the area bargaining pattern, the geographic proximity of the various parts of the employer's operation, differences in methods of compensation, hours of work, and employment benefits, the amount of working time spent away from the plant, and the degree of contact with other employees.(...)[2] (Citas omitidas).

Los factores, entre otros, se pueden resumir en los siguientes: 1) comunidad de intereses, 2) grado de organización de los empleados, 3) historial de negociación colectiva, 4) la categoría de los empleados envueltos, 5) términos y condiciones de empleo que disfrutan los trabajadores, 6) la política patronal referente a lo laboral.

Al hacer la determinación de qué empleados están incluidos en la unidad apropiada la Junta tiene que tener en cuenta que la Ley de Relaciones del Trabajo, *supra*, excluye de su definición de "empleado" a los ejecutivos y supervisores.[3] Así también la casuística ha incorporado otras categorías exceptuadas como los "empleados íntimamente relacionados a la gerencia"[4] y los "empleados confidenciales".[5]

La exclusión de "empleado confidencial" fue adoptada de la jurisdicción federal y se discutió en el caso de *Fábrica de Muebles*

---

[2] 22 Federal Procedure, Lawyers Edition, §52:1044 (1984).
[3] 29 L.P.R.A. §63 (1995).

[4] *Yeshiva University* v. *NLRB*, 444 US 672 (1980).

[5] *NLRB* v. *Hendricks County*, 454 US 170 (1981).

*Dimas.*[6] El término "confidencial" únicamente incluye a aquellos empleados que actúan y asisten en una capacidad confidencial a personas que desempeñan funciones de gerencia en el campo de las relaciones obrero-patronales. La doctrina se refiere a aquel tipo de trabajo que está relacionado con la información y conocimiento sobre las relaciones obreras y la negociación colectiva. Cuando el empleado tiene que manejar documentos y participa en reuniones y gestiones de las cuales se desprende la política laboral de la empresa, efectúa el trabajo confidencial que lo excluye de la definición de "empleado".[7] Esta definición fue ampliada en *Autoridad de las Fuentes Fluviales*,[8] de manera que incluye a ciertas personas que si bien, no son ejecutivos ni supervisores, en el conjunto de las tareas que realizan, atienden asuntos confidenciales relativos a asuntos obrero-patronales, o están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política obrero-patronal de una empresa, o que como parte de sus funciones tienen acceso y/o conocimiento de la política a seguir por la gerencia en cuanto a la manera de formular y administrar las relaciones obrero-patronales. Dentro de esta categoría se encuentran también los empleados que aunque no asisten personal que realiza funciones empresariales en el curso de las relaciones obrero-patronales, sí tienen regularmente acceso a información confidencial relacionada con posibles cambios futuros que pueden resultar de las negociaciones colectivas.[9]

Recapitulando, tenemos dentro de la clasificación de empleados confidenciales los siguientes:

---

[6] Dec. de la J.R.T. Núm. 134 (1955).

[7] Demetrio Fernández y Celina Romany, <u>Derecho Laboral:  Casos y Materiales</u>, U.P.R., Tomo I, 409 (1987).

[8] Dec. de la J.R.T. Núm. 465 (1967).

[9] *Autoridad de Energía Eléctrica*, Dec. de la J.R.T. Núm. PC-73 (1984).

(1) aquéllos que asisten en una capacidad confidencial a personas que desempeñan funciones de gerencia en el campo de las relaciones obrero-patronales;

(2) aquéllos que manejan documentos y tienen que verse involucrados en reuniones y gestiones de las cuales se desprende la política laboral de la empresa;

(3) aquéllos que están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política obrero-patronal;

(4) aquéllos que como parte de sus funciones tienen acceso y/o conocimiento de la política a seguir por la gerencia en cuanto a la manera de formular y administrar las relaciones obrero-patronales; y

(5) aquéllos que aunque no asisten personal que realiza funciones empresariales en el curso de las relaciones obrero-patronales, sí tienen regularmente acceso a información confidencial relacionada con posibles cambios futuros que pueden resultar de las negociaciones colectivas.

A pesar de que la Ley de Relaciones del Trabajo, *supra*, no dispone procedimiento alguno para la clarificación de una unidad apropiada, la Junta tiene que tomar en consideración todos los factores mencionados con anterioridad y atender las exclusiones que hace la ley de la definición de empleados. Esto así para que no se incluyan en una unidad apropiada puestos que no son compatibles con los propósitos de la unidad. Para ésto tiene que hacer una investigación administrativa, llevar a cabo vistas y tomar una decisión basada en el expediente del caso.

III

En el caso ante nos, la Junta determinó que el puesto de Secretaria Ejecutiva Gerencial de la Administración debía incluirse en la unidad apropiada de negociación colectiva representada por la Unión. Llegó a esta conclusión basándose esencialmente en el testimonio de la secretaria y de sus supervisores inmediatos y en prueba documental. La Junta tomó esta determinación a pesar de que el jefe examinador recomendó no incluir dicho puesto en la unidad apropiada de negociación.

La recomendación del jefe examinador a los efectos de que no se incluyera el puesto en controversia en la unidad apropiada, estuvo

basada en entrevistas con los incumbentes de los puestos, sus supervisores inmediatos y sus compañeros de trabajo. Además, analizó e investigó el contenido de las opiniones escritas de las partes, así como evidencia documental contenida en el expediente.[10]

En dicho informe el jefe examinador analizó el puesto de Secretaria Ejecutiva Gerencial. Determinó que dicho puesto estaba bajo la supervisión del Sr. Edelmiro Rojas Negrón, Director de la Oficina de Servicios Generales. De conformidad con la carta de deberes de este puesto, las funciones de la incumbente que ocupa el puesto son las siguientes:[11]

(1) Tomar dictado y transcribir cartas, memorandos, informes de naturaleza rutinaria o confidencial en español e inglés.

(2) Mecanografiar, gestionar firmas y coordinar entrega de memorandos y cartas de índole disciplinario.

(3) Contestar correspondencia de índole rutinaria y sencilla para la firma del Director o Ayudante Especial, según sea delegado.

(4) Llevar el calendario de citas, actividades o reuniones de su supervisor asegurándose de los seguimientos o recordatorios correspondientes.

(5) Atender llamadas y querellas por teléfono; originar llamadas telefónicas.

(6) Cursar citaciones y coordinar entrevistas con empleados o visitantes.

(7) Recibir, cotejar, sellar y registrar correspondencia y distribuirla luego de haber sido revisada por el Director de la Oficina.

(8) Cotejar tarjetas de asistencias (sic) de empleados, preparar hoja de trámite y procesar.

(9) Crear, organizar y mantener al día archivos de expedientes rutinarios, confidenciales o investigaciones sobre asuntos de personal.

(10) Reproducir, compaginar y distribuir documentos de índole confidencial.

(11) Tomar y transcribir minutas de reuniones o visitas administrativas.

---

[10] Informe y Recomendaciones del Jefe Examinador de 5 de septiembre de 1996. Apéndice, págs. 20-34.

[11] *Id.*, Apéndice, pág. 27.

(12) Custodiar y mantener al día el archivo particular de su supervisor.

(13) Dar seguimiento y hacer recordatorios a asuntos pendientes.

Además, entre las tareas marginales de la Secretaria Ejecutiva Gerencial, se encuentra la de participar en la planificación y ejecución o desarrollo de planes de contingencia en casos de huelgas decretadas por la unidad apropiada.[12]

Por otro lado, del Informe del Juez Administrativo de 28 de mayo de 1997, surge que la Secretaria Ejecutiva Gerencial es la asistente personal del Director de Servicios Generales. El Director de esta área produce una serie de documentos confidenciales relacionados con nombramientos de empleados y acciones disciplinarias, los cuales son manejados y transcritos exclusivamente por su secretaria.[13]

Surge también de la recomendación suscrita por el Juez Administrativo que la incumbente en el puesto de secretaria en controversia prepara cartas de amonestación a algunos de los empleados unionados, y que ésta sabe primero que nadie lo que van a hacer con un compañero de trabajo.[14] Esto incluye trabajos relacionados con nombramientos, traslados y ascensos de empleados.

Aún así, el Juez Administrativo entendió que la persona que desempeñaba este puesto no atiende asuntos confidenciales sobre relaciones obrero-patronales o que como parte de sus funciones deba tener conocimiento de la política a seguir por la gerencia en cuanto a la manera de formular y administrar las relaciones obrero patronales. Así también, concluyó que los deberes y funciones asignados al puesto en controversia no establecían en qué forma pudiera afectarse el status de otros empleados al emitir un criterio de juicio discrecional,

---

[12] Apéndice, pág. 74.

[13] Informe del Juez Administrativo de 28 de mayo de 1997, Apéndice, pág. 95.

[14] *Id.*, Apéndice, pág. 98.

por lo cual este puesto tampoco era uno íntimamente ligado a la gerencia.

IV

Es un principio del derecho administrativo que las determinaciones que realiza una agencia tienen que estar sustentadas por evidencia sustancial que obre en el expediente. Las determinaciones de hecho que hace el organismo administrativo tienen que descansar exclusivamente en evidencia y otras materias oficialmente admitidas en la audiencia celebrada.[15] Si dicha determinación no está sostenida por la prueba, la misma estará sujeta a ser revisada por los tribunales apelativos. Dicha revisión judicial está regulada por la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. §2175 (1992), la cual dispone:

> El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en **evidencia sustancial** que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el Tribunal. (Enfasis nuestro).

Se entiende como evidencia sustancial aquélla evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión.[16] En *Hilton Hotels* v. *Junta de Salario Mínimo*, 74 D.P.R. 670 (1954), incorporamos a la doctrina de "evidencia sustancial" dos ingredientes: (1) considerar otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada, incluyendo aquella que sea contraria al punto de vista de la agencia y hasta el punto de que se demuestre claramente que la

---

[15] Demetrio Fernández, <u>Derecho Administrativo y Ley Uniforme de Procedimientos Administrativos</u>, Forum, 595 (1993).

[16] Fernández, *op. cit.*, a la pág. 529.

decisión de ésta no está justificada por una evaluación justa del peso de la prueba; y (2) examinar la totalidad de la prueba presentada ante la agencia, o sea, que la determinación de la agencia esté basada en la totalidad del récord.[17]

Hemos resuelto, además, que aunque la revisión judicial está condicionada por la deferencia que merece el organismo administrativo, esta deferencia no otorga grado alguno de inmunidad a la actividad administrativa.[18] Por lo tanto, las determinaciones de una agencia administrativa estarán sujetas a ser revisadas judicialmente si el foro apelativo se encuentra ante una actuación arbitraria, ilegal o irrazonable o ante determinaciones huérfanas de **prueba sustancial en la totalidad del récord pertinente**.[19]

En el caso ante nos, enfrentamos una determinación de la Junta, que luego de un exhaustivo examen y análisis, concluimos no estuvo basada en prueba sustancial según la totalidad del récord.

De la totalidad del expediente del caso surge que la Secretaria Ejecutiva Gerencial se desempeña como asistente personal del Director de Servicios Generales, quien es un empleado gerencial, y que éste como parte de sus responsabilidades recomienda acciones de asuntos obrero-patronales, tales como despidos, aumentos y traslados de empleados, entre otras. Que para asistirlo en estas tareas la Secretaria Ejecutiva Gerencial tiene acceso directo e inmediato a todos los documentos confidenciales que se preparan en torno a estos asuntos. Así, ésta se encarga de mecanografiar y coordinar la entrega de memorandos y cartas de índole disciplinario, custodia un archivo confidencial con expedientes e investigaciones sobre asuntos de personal, y conoce de antemano las medidas que se tomarán para con determinado empleado. Inclusive, los documentos relacionados con la

---

[17] *Id.* a la pág. 530.

[18] *Misión Industrial* v. *Junta de Planificación*, op. de 21 de marzo de 1997, 142 D.P.R. ___ (1997),97 J.T.S. 34.

política laboral provenientes de la Oficina del Director Ejecutivo y de la Oficina del Director de Recursos Humanos se le entregan a ella exclusivamente para hacerlos llegar a su supervisor. Adicionalmente, ésta participa en la planificación y ejecución de planes de contingencia en caso de huelgas decretadas por la unidad apropiada.

A base de los hechos expuestos con anterioridad es forzoso concluir que debido a la relación directa de la Secretaria Ejecutiva Gerencial con el Director del Departamento de Servicios Generales y como consecuencia de las tareas que realiza, ésta debe considerarse como una "empleada confidencial" a la luz de la doctrina discutida. Por lo cual, dicho puesto no puede incluirse en la unidad apropiada de negociación como solicita la Unión.

Por entender que la decisión de la Junta y la resolución del Tribunal de Circuito de Apelaciones que la confirma no están justificadas por una evaluación razonable de la totalidad del expediente y la evidencia sustancial, revocamos.

Se dicta sentencia revocando la resolución del Tribunal de Circuito de Apelaciones de 30 de enero de 1998 y se deja sin efecto la Decisión y Orden de la Junta de Relaciones del Trabajo de Puerto Rico de 12 de agosto de 1997 en lo que respecta al caso ante nuestra consideración. Se dispone que el puesto de Secretaria Ejecutiva Gerencial de la Administración de Terrenos de Puerto Rico está excluido de la unidad apropiada de negociación representada por la Unión Independiente de Empleados. Se devuelve el caso a la Junta de Relaciones del Trabajo de Puerto Rico para que proceda de conformidad con lo aquí dispuesto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente con opinión escrita. El Juez Presidente señor Andréu García no intervino.

---

[19] *Id*; *Fuertes* v. *A.R.P.E.*, op. de 17 de diciembre de 1993, 134 D.P.R. __ (1993),93 J.T.S. 165.

Isabel Llompart Zeno
  Secretaria del Tribunal Supremo

Isabel Llompart Zeno
  Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Terrenos

    Peticionaria

        vs.                   CC-1998-227      Certiorari

Unión Independiente de Empleados
de Administración de Terrenos

    Recurrida

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 16 de julio de 1999.

La norma que determina el alcance de la facultad judicial para revisar las decisiones de las agencias administrativas es bien conocida y está expresamente dispuesta en la Ley de Procedimiento Administrativo Uniforme. Conforme a la norma referida, las conclusiones de derecho en tales decisiones son "revisables en todos sus aspectos por el tribunal". En cambio, las determinaciones de hechos "serán sostenidas por el tribunal, si se basan en evidencia sustancial...". 3 L.P.R.A. sec. 2175.

Reiteradamente hemos resuelto, en relación a la norma referida, que el alcance de nuestra función revisora en cuanto a las cuestiones de derecho es muy distinto al de nuestra facultad respecto a las

cuestiones de hecho. En cuanto a las cuestiones de derecho, tenemos la autoridad para revisarlas a fondo en todos sus extremos. Sin embargo, en cuanto a las determinaciones de hechos, nuestra autoridad **está claramente limitada**: podemos intervenir sólo si tales determinaciones no están apoyadas por evidencia sustancial; es decir, podemos intervenir **si la determinación de la agencia es arbitraria, o tan irrazonable que constituye un abuso de discreción**. Reyes Salcedo v. Policía de P.R., op. de 13 de mayo de 1997, 143 D.P.R. ___, 97 JTS 58; Fuertes v. A.R.P.E., op. de 17 de diciembre de 1993, 134 D.P.R. ___, 93 JTS 165; Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692 (1975). En efecto, de manera expresa y muy deliberada hemos resuelto que "la norma de la evidencia sustancial, aplicable a las determinaciones de hechos, **persigue evitar la sustitución del criterio del organismo administrativo... por el criterio del tribunal revisor**". Reyes Salcedo v. Policía de P.R., supra. También hemos resuelto que **"debemos ser cautelosos al intervenir con dichas determinaciones [de hechos]"**, Metropolitana S.E. v. A.R.P.E., op. de 10 de abril de 1995, 138 D.P.R. ___, 95 JTS 39; Fuertes v. A.R.P.E., supra; Viajes Gallardo v. Homero Clavel, 131 D.P.R. 275 (1992); **que se presumen correctas**, Méndez & Co., Inc. v. D.A.C.O., 104 D.P.R. 707 (1976). Basta que tengan una base racional para que dichas determinaciones sean concluyentes para el foro judicial. D. Fernández, Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, pág. 529.

En el caso de autos, una mayoría de este Tribunal se aparta de la normativa referida. Por su propia admisión, dicha mayoría dice que realizó **"un exhaustivo examen y análisis"** del expediente administrativo, para, a base de tal examen y análisis, **sustituir su juicio por el de la Junta de Relaciones del Trabajo de Puerto Rico**. Se trata claramente de una actuación ultra vires de la mayoría de este Foro. No le corresponde a este Tribunal escudriñar de tal manera supuestamente exhaustiva el expediente administrativo para formular sus propias determinaciones de

hechos.  **<u>Lo único que nos compete es verificar si las determinaciones de la Junta tienen apoyo sustancial en el expediente administrativo</u>**.

Al aplicar aquí la norma de revisión judicial referida, es evidente que la mayoría comete un claro error en su dictamen. En la vista administrativa celebrada en este caso por la Junta de Relaciones del Trabajo de Puerto Rico, el juez examinador interrogó al funcionario para quien trabajaba la secretaria cuyo puesto nos concierne. Ese funcionario testificó: (1) que él no tenía participación como tal en los asuntos sobre la política obrero-patronal de la agencia; (2) que no le correspondía, ni se le había delegado, tarea confidencial alguna relacionada con asuntos obrero-patronales; y, (3) que tales asuntos le correspondían a la Oficina de Recursos Humanos, y no a la Oficina que él dirigía, que era la de Servicios Generales. Junto a este testimonio, el juez examinador también consideró el de la propia secretaria cuyo puesto aquí nos concierne.  Esta testificó igualmente que ella no había redactado a maquinilla ni archivado documentos confidenciales relacionados con la política obrero-patronal de la agencia.  Con arreglo a estos **dos testimonios cruciales**, el juez examinador determinó como cuestión de hecho que la secretaria aludida **<u>no atendía asuntos confidenciales sobre relaciones obrero-patronales</u>**.  La propia Junta acogió esta determinación.

Como puede observarse, la referida determinación de la Junta estuvo claramente fundamentada en evidencia sustancial.  No hay manera lógica alguna que este Tribunal pueda concluir que la aludida determinación de hecho del juez examinador, que interrogó los testigos aludidos y recibió los testimonios mencionados antes, fue arbitraria y sin base racional.

En resumen, pues, una mayoría del Tribunal descarta por puro <u>fiat</u> una bien fundada determinación de hecho de la Junta, y se aventura por su propia cuenta a formular una determinación contraria a ésta a base de un supuesto "examen exhaustivo" del expediente administrativo.  Como no puedo estar conforme con un dictamen tan contrario a las normas jurídicas

aplicables, que además es en detrimento de los derechos de un trabajador, disiento.


                                    JAIME B. FUSTER BERLINGERI
                                         JUEZ ASOCIADO