# 2006 DTA 103

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

CONSEJO DE EDUCACIÓN SUPERIOR DE PUERTO RICO
Recurrente

v.

OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION (OPEIU)
Recurrido

Núm. KLRA-05-00572

San Juan, Puerto Rico, a 10 de agosto de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Vivoni del Valle

Aponte Hernández, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

El recurrente, Consejo de Educación Superior de Puerto Rico (en adelante, Consejo), nos solicita que revoquemos la resolución emitida el 17 de junio de 2005 por la Comisión de Relaciones del Trabajo del Servicio Público. Mediante la misma, dicho foro administrativo ratificó su dictamen de 5 de mayo de 2005, en el cual incluyó como parte de la unidad apropiada del Consejo a los empleados que ocupan puestos en la clase de Analistas de Educación Superior, niveles I y II.

Por los fundamentos que expondremos, se revoca la resolución recurrida.

**I**

El 3 de septiembre de 2004, la Office and Professional Employees International Union (en adelante, OPEIU) presentó ante la Comisión de Relaciones del Trabajo del Servicio Público (en adelante, Comisión) una petición de representación, con el propósito de convertirse en la representante exclusiva de los empleados de carrera del Consejo.

El 3 de marzo de 2005, la Comisión celebró una sesión especial para determinar la composición de las unidades apropiadas para fines de la negociación colectiva. Participaron el Consejo y la OPEIU. El 17 de marzo de 2005, la Comisión emitió la *Determinación Sobre Unidad Apropiada.* ▇ En la misma, expresó que aceptaba los acuerdos de las partes, siempre y cuando éstos no fueran irrazonables o contrarios a la Ley. Así, dio aprobación al acuerdo de establecer una sola unidad apropiada. Determinó que "*los propósitos de la Ley se cumplen más certera y eficazmente mediante la aprobación de una sola unidad apropiada, llamada Unidad A*

*para todo el personal elegible del Consejo de Educación Superior"*. ■ Además, aprobó el acuerdo referente a la inclusión y exclusión de entre 45 clases de puestos en el Consejo. ■ Las partes no llegaron a un acuerdo en cuanto a la inclusión o exclusión de las siguientes clases de puestos: Analista de Educación Superior, niveles I y II, y Coordinador Administrativo.

Entretanto, la Comisión celebró la elección y certificó a la OPEIU como el representante exclusivo de la Unidad Apropiada A denominada Empleados del Consejo de Educación Superior. Luego resolvió la controversia relacionada con la inclusión o exclusión de las clases de puestos de Analista de Educación Superior, niveles I y II, y Coordinador Administrativo. Así, el 5 de mayo de 2005, la Comisión emitió *Determinación Suplementaria de Unidad Apropiada*. Conforme surge de la misma, aprobó el acuerdo de las partes para excluir de la unidad apropiada la clase de Coordinador Administrativo, por motivo de confidencialidad y supervisión. Por otra parte, adjudicó la controversia en cuanto a los niveles I y II de la clase de Analista de Educación Superior. Dictaminó que los puestos de ambos niveles fueran incluidos en la unidad apropiada. La determinación fue notificada a las partes el 6 de mayo de 2005.

El 23 de mayo de 2005, el Consejo interpuso *Excepción a la Composición de la Unidad Apropiada*, conforme la Sección 309(H) del Reglamento de la Comisión. ■ Solicitó que se excluyera de la unidad apropiada los puestos de las clases de Analista de Educación Superior, niveles I y II. Alegó que se trata de puestos cuyos empleados ejercen tareas de supervisión. Acompañó copia de las descripciones de los puestos.

El 17 de junio de 2005, la Comisión emitió resolución. Mediante la misma, ratificó el dictamen emitido el 5 de mayo de 2005, en el cual incluyó como parte de la unidad apropiada a los empleados que ocupan los puestos de la clase de Analistas de Educación Superior, niveles I y II. ■ Concluyó que: *"No podemos considerar solamente las descripciones de puestos para excluir un puesto por el elemento de supervisión, mucho menos si en la Especificación de Clase no existe tal deber. Además, al momento de emitir la Determinación evaluamos las Especificaciones de Clase y las Descripciones de Puesto a los efectos de incluir la clase en la unidad apropiada"*. ■ El Consejo radicó *Moción de Reconsideración*. La Comisión no actuó sobre la misma en el término reglamentario.

Inconforme, oportunamente el Consejo acudió ante nos señalando que:

*"Erró la Comisión al incluir en la Unidad Apropiada del Consejo las clases de Analista de Educación Superior a pesar de que la evidencia que obra en el expediente administrativo demuestra que dichas clases deben ser excluidas porque ejercen tareas de supervisión."*

En síntesis, reitera su posición de que los puestos en las clases de Analista de Educación Superior, niveles I y II deben ser excluidos de la unidad apropiada, por tratarse de plazas cuyos empleados ejercen tareas de supervisión.

El 11 de octubre de 2005 se concedió a la parte recurrida prórroga para presentar su alegato. Al día de hoy no ha comparecido, por lo que resolvemos sin el beneficio de su argumentación.

## II

La Ley Núm. 45 de 25 de febrero de 1998, 3 L.P.R.A. sec. 1451 *et seq.*, conocida como Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, fue aprobada con el propósito de conferirle a los empleados públicos del gobierno central del Estado Libre Asociado que no estaban cubiertos por la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 61 *et seq.*, el derecho a la organización sindical y a la negociación colectiva, sujeto a las condiciones establecidas en la propia ley. *Asoc. de Maestros de P.R. v. C.R.T.S.P.*, **2003 J.T.S. 50**; *F.M.P.R. v. Molina Torres*, **2003 J.T.S. 168**.

A esos fines, la Ley Núm. 45, *supra*, creó la Comisión de Relaciones del Trabajo del Servicio Público como la agencia administrativa encargada de interpretar y aplicar sus disposiciones en todo lo concerniente a los procesos de organización, certificación y descertificación de las organizaciones sindicales; en procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos; y procedimientos relacionados con prácticas ilícitas. 3 L.P.R.A. sec. 1452t.

En lo que respecta a la controversia ante nuestra consideración, las secciones 4.3 a 4.6 de la ley Núm. 45, 3 L. P.R.A. secs. 1451e a 1451h, establecen que la Comisión determinará las unidades apropiadas que existirán en las agencias del gobierno central a cuyos empleados se les concede el derecho a organizarse y afiliarse a una organización sindical como su representante exclusivo. En la determinación de la unidad apropiada, la Comisión tomará en consideración, entre otros criterios, los siguientes:

*"(a) Comunidad de intereses entre los empleados.*

*(b) Evitar el fraccionamiento excesivo de las unidades.*

*(c) Patrones actuales de organización formal e informal de los empleados.*

*(d) Protección del pleno disfrute de los derechos reconocidos en este capítulo.*

*(e) Viabilidad de las negociaciones.*

*(f) Similitud funcional en requerimiento o condiciones del trabajo.*

*(g) Sistema de personal establecido y planes de clasificación y retribución implantados en la agencia.*

*(h) Acuerdo entre las partes."*

3 L.P.R.A. sec. 1451e

En dicha determinación, la Comisión tiene que tomar en cuenta que la Ley de Relaciones del Trabajo para el Servicio Público dispone que, entre otros empleados, los supervisores de todas las agencias quedarán excluidos de todas las unidades apropiadas para fines de negociación colectiva certificadas por la Comisión. 3 L.P.R.A. sec. 1451d. ■ La Ley define *"supervisor"* como *"[c]ualquier empleado que, ejerciendo su discreción, tenga autoridad para hacer recomendaciones efectivas sobre la imposición de medidas disciplinarias; o que tenga la responsabilidad habitual de asignar o dirigir el trabajo, si tales responsabilidades surgen de una ley, de un reglamento o de la descripción de deberes de su puesto, independientemente de que su nombramiento sea uno de carrera, confianza, transitorio, probatorio, provisional, irregular, por jornal o por contrato"*. 3 L.P.R.A. sec. 1451a(dd). La Comisión tiene que tomar en consideración los factores mencionados y atender las exclusiones que hace la ley. Esto es así para que no se incluyan en la unidad apropiada puestos que no son compatibles con los propósitos de la unidad.

Por otra parte, es un principio del Derecho Administrativo que las determinaciones que realiza una agencia tienen que estar sustentadas por evidencia sustancial que obre en el expediente. Las determinaciones de hechos que hace el organismo administrativo tienen que descansar exclusivamente en evidencia y otras materias oficialmente admitidas en la audiencia celebrada. Si dicha determinación no está sostenida por la prueba, estará sujeta que sea revisada por los tribunales apelativos. *Adm. de Terrenos v. U.I.E.A.T.*, 149 D.P.R. 65, 79 (1999).

Dicha revisión judicial está regulada por la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175, que dispone:

*"El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.*

*Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en **evidencia sustancial** que obra en el expediente administrativo.*

*Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."* (Énfasis suplido)

Se entiende como evidencia sustancial aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Ramírez v. Depto. de Salud*, 147 D.P.R. 901, 905 (1999); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 437 (1997); *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670, 687 (1953). Se ha reconocido la norma jurisprudencial de que, de ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. *Pacheco Torres v. Estancias de Yauco, S.E.*, **2003 J.T.S. 148**; *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 109 (1997). Dicho análisis requiere que la evidencia sea considerada en su totalidad, incluyendo tanto aquella que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, *supra*, pág. 437. Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada ... y hasta el punto que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba"*. *Metropolitan S.E. v. A.R.P.E.*, 138 D.P.R. 200, 213 (1995). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. *Ramírez v. Depto. de Salud*, *supra*; *Chase Manhattan v. Emmanuelli Bauzá*, 111 D.P.R. 708 (1981).

En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. *Rebollo Vda. de Liceaga v. Yiyi Motors*, **2004 J.T.S. 4**; *Oficina de Ética Gubernamental v. Román González*, **2003 J.T.S. 74**; *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R 269 (2000). Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 129 (1998). Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. *Id.*; *T-JAC Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 80 (1999).

En aquellos asuntos que puedan ser catalogados como cuestiones mixtas de hecho y de derecho, la norma establecida es que la revisión judicial será análoga a la revisión de asuntos de derecho. Estos asuntos mixtos de hecho y de derecho surgen ordinariamente en ocasiones en las cuales existe confusión en cuanto a la aplicación del derecho a los hechos particulares del caso. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. ed., Bogotá, Forum, 2001, pág. 561.

## III

En el caso ante nos, la Comisión determinó que los puestos en la clase de Analista de Educación Superior, niveles I y II, debían incluirse en la unidad apropiada de negociación colectiva representada por la OPEIU. Llegó a esta conclusión basándose esencialmente en las descripciones de los puestos y las especificaciones de la clase.

En el nivel I, la clase tiene tres puestos: los números 30204, 30207 y 30217. De éstos, los puestos número 30207 y 30217 no tienen descripción, por ser los últimos dos que se crearon. ■ El nivel II tiene cinco puestos: los número 30201, 30202, 30203, 30206 y 30208. En la sesión especial, la Comisión sólo evaluó la descripción de los puestos 30201, 30208 y 30206, pero se estipuló que los demás tenían las mismas descripciones. ■

En cuanto al nivel I, la Comisión evaluó las tareas del puesto número 30204, cuya incumbente es la Sra. Lucía Carballada Trujillo. Conforme surge de las tareas del puesto, y en lo pertinente a la controversia que nos ocupa, una de las funciones esenciales de la incumbente es: *"[e]valuar y supervisar la ejecución de la Asistente Administrativa de OLA y mantengo informado al Director de OLA sobre los diversos asuntos de los procesos de evaluación"*. De la *Descripción del Puesto* surge, además, que ésta supervisa a la Sra. Juanita Rivera Fuertes, Asistente Administrativa I. ■

En relación con el nivel II, se evaluaron los puestos número 30201, 30206 y 30208. Entre las funciones esenciales del puesto número 30201, cuya incumbente es la Sra. Carmen Báez Quiñones, ésta: *"[d]istribuy[e] y supervis[a] trabajo secretarial asignado a otras Asistentes Administrativas, según las prioridades de la OLA. [...]"*. ■ Además, conforme surge del documento de *Descripción de Puesto*, la incumbente de dicho puesto, indica que supervisa a una Asistente Administrativo III de nombre Wanda Viera Andino. ■

El puesto número 30206, ocupado por la Sra. Lourdes Andino Barbosa, enumera como tarea marginal: *"[s]upervisar, orientar y asesorar a los nuevos Analistas de Educación Superior"*. ■ La incumbente de dicho puesto indica que supervisa a la Sra. Johanna Rivera Rivera, Asistente Administrativa de Licencia y Acreditación II. ■

Por último, aunque la tarea de supervisión no forma parte de las funciones esenciales de puesto número 30208, cuyo incumbente es el Sr. Ángel L. Avilés Castañón, conforme a la hoja de *Descripción de Puesto*, éste supervisa a la Sra. Maribel Cruz Figueroa, Asistente Administrativa de Licencia y Acreditación II. ■

Surge también de la *Descripción de Puesto* de cada uno de los incumbentes de los cuatro puestos anteriores que éstos pueden utilizar su propio criterio y la revisión se limita a algunos aspectos de su trabajo. ■

Por otro lado, aunque en los puestos número 30207 y 30217 no existen documentos que describan las tareas de los mismos, surge del expediente que dichos puestos también ejercen trabajos relacionados con la supervisión de los empleados. La incumbente del puesto número 30207 es la Sra. María I. Ortiz, cuyo nombre consta en la *Solicitud para Reclutamiento de Empleados* como supervisora que recomienda la renovación del nombramiento transitorio de Jeovanny Laboy Vélez, Asistente Administrativa I. También, la Sra. María I. Ortiz evaluó el desempeño de la empleada. ■ Igualmente, la incumbente del puesto número 30217, Sra. Socorro García Velázquez, evaluó el desempeño de la empleada Berlines Rodríguez Padilla, Asistente Administrativa II, que culminó en la concesión de un bono por productividad para esta empleada. ■ Aparte de ello, la Sra. Socorro García Velázquez es quien firma el documento denominado *"punch detail"* correspondiente a la asistencia diaria de la mencionada empleada. ■

De la hoja de deberes y descripciones, así como de las labores realizadas por estos empleados, se desprende que se trata de puestos que ejercen tareas de supervisión. Aún así, la Comisión entendió que la clase de Analista de Educación, niveles I y II debían formar parte de la unidad apropiada. Luego de un exhaustivo examen y análisis del expediente, concluimos que tal determinación no estuvo basada en la prueba sustancial según la totalidad del expediente.

De la totalidad del expediente, surge que los puestos incluidos en la clase de Analistas de Educación Superior, niveles I y II, en efecto ejercen funciones de supervisión con relación a otros empleados. Específicamente, cada Analista de Educación Superior supervisa un Asistente Administrativo. También, tiene la responsabilidad habitual

de asignar y dirigir el trabajo del Asistente Administrativo, de supervisar su asistencia, de evaluar su desempeño, así como de someter recomendaciones en cuanto a nombramientos, clasificación, acciones disciplinarias y otros aspectos esenciales. A base de lo anterior, y como consecuencia de dichas tareas, éstos empleados deben considerarse como "*supervisores*" según el término ha sido definido, por la Ley de Relaciones del Trabajo para el Servicio Público. Como tales, y de conformidad con la sección 1451d antes citada, éstos están excluidos de los derechos y beneficios de la mencionada ley. Por ello, los puestos en la clase de Analista de Educación Superior, nivel I (números 30204, 30207 y 30217) y nivel II (números 30201, 30202, 30203, 30206 y 30208), no pueden incluirse en la unidad apropiada de negociación como lo solicitó la OPEIU. A tenor con lo anterior, procede revocar la resolución emitida por la Comisión.

## IV

Por los fundamentos que anteceden, se revoca la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

## ESCOLIOS 2006 DTA 103

**1.** Notificada el 18 de marzo de 2005.

**2.** Páginas 352-353 del apéndice del recurso.

**3.** La Comisión incluyó en su determinación de unidad apropiada 36 clases de puestos y excluyó 9 clases. Los puestos incluidos y excluidos de la unidad apropiada se detallan en la *Determinación Sobre Unidad Apropiada*, páginas 350-358 del apéndice del recurso.

**4.** La citada sección dispone que las partes podrán presentar excepciones a la composición apropiada dentro de los 14 días siguientes al recibo de la determinación de la Comisión. El Consejo alegó que recibió la determinación suplementaria de unidad apropiada el 9 de mayo de 2005.

**5.** La resolución fue notificada a las partes el 20 de junio de 2005.

**6.** Página 490 del apéndice del recurso.

**7.** Específicamente, la sección 1451d, inciso b, excluye a los siguientes funcionarios y empleados:

"*(1) Empleados con nombramientos de confianza, transitorios, irregulares, por jornal y empleados confidenciales.*

*(2) Funcionarios sujetos a confirmación legislativa.*

*(3) **Los supervisores de todas las agencias, según este término ha sido definido en este capítulo***.

*(4) Los empleados de la Comisión.*

*(5) Los empleados de la Oficina Central.*

*(6) Los empleados de la Oficina Propia del Gobernador y de unidades administrativas u oficinas adscritas que ejercen funciones confidenciales u ocupan puestos de confianza.*

*(7) Los empleados de la Oficina de Gerencia y Presupuesto.*

*(8) Los empleados que presten servicios para el Gobierno de Puerto Rico o para cualquiera de sus agencias o*

*instrumentalidades en oficinas fuera de Puerto Rico.*

*(9) Los empleados de la Comisión Estatal de Elecciones.*

*(10) Los miembros de la Policía y la Guardia Nacional de Puerto Rico y los agentes, empleados y funcionarios del Departamento de Justicia.*

*(11) Los empleados de la Oficina de Ética Gubernamental.*

*(12) Organismos creados con un propósito específico por un término fijo."*

(Énfasis suplido). 3 L.P.R.A. sec. 1451d.

**8.** Véase, testimonio del Sr. Eric Cruz, Oficial de Recursos Humanos del Consejo, vertido durante la sesión especial, pág. 250 del apéndice del recurso

**9.** Página 251 del apéndice del recurso.

**10.** Véase, función esencial del puesto número 30 e inciso 10 del citado documento, página 345 del apéndice del recurso.

**11.** Función esencial número 13, páginas 98 del apéndice del recurso.

**12.** Página 91 del apéndice del recurso.

**13.** Véase, función número 28, página 106 del apéndice del recurso.

**14.** Página 101 del apéndice del recurso.

**15.** Página 119 del apéndice del recurso.

**16.** Páginas 92, 102, 120 y 346 del apéndice del recurso.

**17.** Páginas 316 y 318 del apéndice del recurso.

**18.** Páginas 334-341 del apéndice del recurso.

**19.** Páginas 322, 325-333 del apéndice del recurso.