EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Departamento de Estado<br><br>Peticionario<br><br>vs.<br><br>Unión General de Trabajadores (División de Empleados Públicos)<br><br>Recurrida | Certiorari<br><br>2008 TSPR 23<br><br>173 DPR \_\_\_\_ |

Número del Caso: CC-2006-177

Fecha: 13 de febrero de 2008

Tribunal de Apelaciones:

       Región Judicial de San Juan

Juez Ponente:

       Hon. Heriberto Sepúlveda Santiago

Oficina del Procurador General:

       Lcda. Lizette Mejías Avilés
       Procuradora General Auxiliar

       Lcdo. Guillermo A. Mangual Amador
       Procurador General Auxiliar

Abogado de la Parte Recurrida:

       Lcdo. Edwin Rivera Cintrón

Materia:  Determinación sobre Unidades Apropiadas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Estado

   Peticionario

       v.                            CC–2006–177      Certiorari

Unión General de Trabajadores
(División de Empleados
Públicos)

   Recurrida

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico a 13 de febrero de 2008.

El Departamento de Estado nos solicita que revoquemos una resolución del Tribunal de Apelaciones que confirmó las determinaciones sobre unidad apropiada que hizo la Comisión de Relaciones del Trabajo para fines de la sindicalización de los empleados del Departamento de Estado. La Comisión incluyó, en la única unidad apropiada aprobada para la antes mencionada dependencia pública, ciertos empleados cuya exclusión había sido solicitada por los fundamentos de confidencialidad y supervisión. El Departamento de Estado sostiene que la inclusión se debió a una interpretación restrictiva de los conceptos "empleado confidencial" y "supervisor".

La controversia planteada nos brinda la oportunidad de delimitar las definiciones de "empleado confidencial" y "supervisor" contenidas en la Ley Núm. 45 de 25 de febrero de 1998, Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico. En el día de hoy resolvemos que la definición de "supervisor" se extiende a aquellos empleados que al ejercer su discreción tienen autoridad para hacer recomendaciones sobre la imposición de medidas disciplinarias o que tienen la responsabilidad de asignar o dirigir el trabajo de forma habitual y no incidental. En cuanto al concepto "empleado confidencial," resolvemos que la Comisión no debe limitar su interpretación a la definición desarrollada en el contexto de la Ley Núm. 130 de 8 de mayo de 1945, Ley de Relaciones del Trabajo de Puerto Rico que, a su vez, limita su aplicación a empleados vinculados a la política laboral de la agencia. Por el contrario, entendemos que la definición además debe incluir a aquellos empleados cuya función tiene un efecto significativo en la formulación e implantación de la política pública general de la agencia o que mantienen una relación de confidencialidad con los que la formulan o implantan.

I

El 9 de septiembre de 2003, la Unión General de Trabajadores, División de Empleados Públicos, (en adelante, UGT), presentó una Petición de Representación ante la Comisión de Relaciones del Trabajo (en adelante, la Comisión) en la que solicitó una elección para escoger al representante

exclusivo de todos los empleados de carrera del Departamento de Estado. La Comisión celebró una Sesión Especial para la determinación de Unidades Apropiadas en la cual estuvieron representados tanto el Departamento de Estado como la UGT. A solicitud de la Comisión, el Departamento de Estado presentó unas descripciones de puestos y un organigrama de algunas de las Secretarías del Departamento de Estado. Por su parte, la UGT sometió un memorial con las clases y puestos en controversia y la composición de las unidades apropiadas. Eventualmente las partes llegaron a un acuerdo para incluir 28 clases en la unidad apropiada y dejar fuera 34. Sin embargo, existía controversia sobre la inclusión de 22 clases adicionales.[1]

Posteriormente, la Comisión emitió su determinación sobre Unidades Apropiadas. En la misma, aprobó una sola unidad apropiada en el Departamento de Estado llamada "Unidad A" para todo el personal elegible. Para determinar su composición la Comisión acogió el acuerdo entre las partes sobre 62 puestos, y resolvió la controversia sobre los puestos para los que no existía acuerdo.

---

[1] Las clases en controversia eran las siguientes: Administrador(a) de Sistemas de Oficina I, Administrador(a) de Sistema de Oficina II, Analista de Presupuesto, Analista en Fiscalización de Ingresos, Analista en Tecnología Cibernética, Asistente en Administración de Sistemas de Oficina III, Asistente en Recursos Humanos, Conductor(a) de Vehículos, Contador(a) Ejecutivo(a), Encargado(a) de Servicios Gastronómicos, Especialista en Asuntos Internacionales, Oficial Administrativo(a), Oficial de Asuntos Internacionales, Oficial de Compras II, Oficial de Comunicaciones y Prensa, Oficial de Juntas Examinadoras, Oficial de Preintervenciones, Oficial de Protocolo, Oficial de Recaudaciones, Oficial Ejecutivo, Oficial en Administración de Recursos Humanos y Traductor(a).

Luego que la Comisión hiciera su determinación sobre la Unidad Apropiada, el Departamento de Estado presentó un "Escrito Presentando Excepciones a la Composición de la Unidad Apropiada", conforme a la Sección 309(h) del Reglamento de dicha instrumentalidad. En su escrito, el Departamento de Estado solicitó que se excluyera de la Unidad Apropiada varios puestos por los fundamentos de confidencialidad y supervisión. No obstante, la Comisión confirmó el dictamen emitido previamente y ordenó la celebración de elecciones.

Tras la determinación de la Comisión, el Departamento de Estado solicitó revisión ante el Tribunal de Apelaciones. En esencia, cuestionó la interpretación restrictiva del concepto "empleado confidencial" que hizo la Comisión, así como la inclusión en la Unidad Apropiada de ciertos empleados que a su entender ejercen funciones de supervisión. El Tribunal de Apelaciones confirmó la determinación de la Comisión basándose en el estándar de deferencia a las determinaciones administrativas. Además, pareció convalidar la utilización por analogía de la jurisprudencia desarrollada en el contexto de la Ley Núm. 130 de 8 de mayo de 1945 (en adelante, Ley de Relaciones del Trabajo), 29 L.P.R.A. sec. 61 y ss., para dilucidar controversias relacionadas con la Ley Núm. 45 (en adelante, Ley para el Servicio Público), 3 L.P.R.A. sec. 1451 y ss.

Inconforme con el dictamen, el Departamento de Estado acude ante nos mediante recurso de *certiorari*. En su

escrito, presenta básicamente los mismos señalamientos de error esbozados ante el Tribunal de Apelaciones, cuestionando la interpretación restrictiva que hizo la Comisión de los conceptos "empleado confidencial" y "supervisor". Examinado el recurso, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

El 25 de febrero de 1998, la Asamblea Legislativa de Puerto Rico aprobó la Ley para el Servicio Público, *supra*. Esta ley se aprobó con el propósito de conferir a los empleados públicos que no estén cubiertos por la Ley Núm. 130, Ley de Relaciones del Trabajo, *supra*, el derecho a organizarse para negociar sus condiciones de trabajo según los parámetros establecidos por la propia Ley para el Servicio Público, *supra*. Estos parámetros se circunscriben a tres criterios esenciales, a saber: (1) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente del mejoramiento de las condiciones de trabajo de los empleados públicos; (2) evitar interrupciones en los servicios que prestan las agencias gubernamentales, y (3) promover la productividad en el servicio público. Véase Exposición de Motivos de la Ley Núm. 45, *supra,* a la pág.148. Véase además, Asociación de Maestros de P.R. v. Comisión de Relaciones del Trabajo, 159 D.P.R. 81, 89 (2003).

A esos fines, la Ley para el Servicio Público, *supra*, reconoció a los empleados de las agencias centrales tradicionales el derecho a organizarse y afiliarse en

organizaciones sindicales de su elección. Ley para el Servicio Público, *supra*, sec. 1451b. Así, pues, los empleados de las diferentes unidades apropiadas que desean sindicalizarse deben escoger, mediante voto mayoritario, la organización que los representará ante la agencia correspondiente.

La organización sindical que resulte vencedora y que sea certificada como representante exclusivo de los empleados comprendidos en esa unidad apropiada, tendrá autoridad para negociar con la agencia correspondiente un convenio colectivo en el que se discutan y acuerden, entre otras cosas, asuntos relacionados con salarios, beneficios marginales, así como términos y condiciones de empleo. Ley Núm. 45, *supra*, sec. 1451j. Véase Asociación de Maestros de P.R. v. Comisión de Relaciones del Trabajo, *supra*.

A fin de hacer cumplir las disposiciones de la Ley para el Servicio Público, *supra*, la propia ley dispuso para la creación de un organismo administrativo denominado "Comisión de Relaciones del Trabajo del Servicio Público", a quien confirió poderes y facultades cuasilegislativas y cuasijudiciales delimitadas por la ley. Ley para el Servicio Público, *supra*, sec. 1452t. Entre las facultades delegadas, se encuentra el deber y la obligación ministerial de interpretar, aplicar y hacer cumplir las disposiciones de dicha ley en todo lo relativo a los procesos de organización, certificación, descertificación de organizaciones sindicales; en los procedimientos relacionados con la conciliación y

arbitraje de negociaciones de convenios colectivos; en los procedimientos relacionados con prácticas ilícitas; y en todos aquellos aspectos que este capítulo le delegue alguna actuación particular. Véase Asociación de Maestros de P.R. v. Comisión de Relaciones del Trabajo, *supra*, a la pág. 90.

Entre los aspectos que la ley delega a la Comisión de Relaciones del Trabajo, se encuentra el determinar las unidades apropiadas que existirán en las agencias, en consideración a unos criterios específicos enumerados en la propia Ley para el Servicio Público, *supra*. Los criterios son los siguientes:

a) Comunidad de intereses entre los empleados.
b) Evitar el fraccionamiento excesivo de las unidades.
c) Patrones actuales de organización formal e informal de los empleados.
d) Protección del pleno disfrute de los derechos reconocidos en la ley.
e) Viabilidad de las negociaciones.
f) Similitud funcional en requerimiento o condiciones del trabajo.
g) Sistema de personal establecido y planes de clasificación y retribución implantados en la agencia.
h) Acuerdo entre las partes.

Por su parte, la sección 4.2 de la Ley para el Servicio Público, *supra*, sec. 1451d, establece una serie de empleados que deben quedar excluidos de todas las unidades apropiadas certificadas por la Comisión para fines de la negociación colectiva. La mencionada disposición indica que quedarán excluidos, entre otros:

1) Empleados con nombramientos de confianza, transitorios, irregulares, por jornal y empleados confidenciales.
2)…

3)  Los supervisores de todas las agencias, según este término ha sido definido en este capítulo.
4)…

La controversia que nos ocupa requiere, precisamente, delimitar el alcance de algunos conceptos incluidos en la disposición transcrita, a saber, el concepto "empleado confidencial" y "Supervisor."

### III

### A

Con respecto al concepto "supervisor," la Comisión sostuvo que éste se extiende a aquellos empleados cuya función de supervisión es recurrente o habitual y está claramente delegada. Por tanto, decidió incluir en la unidad apropiada las clases que meramente colaboran de forma incidental en la labores de supervisión.

En su determinación de unidad apropiada la Comisión se negó a excluir tres clases cuya exclusión había sido solicitada por el Departamento de Estado bajo dicho concepto. La Comisión entendió que la alegada supervisón ejercida era de carácter incidental, accesoria y carente de autoridad y responsabilidad primaria.  Al así decidir, se reafirmó en resoluciones anteriores, las cuales habían resuelto que la sustitución ocasional en las funciones de supervisor no tiene el efecto de privar al puesto de su derecho a la sindicalización, ausente otras consideraciones.

El Departamento de Estado pidió la exclusión de la clase Contador(a) Ejecutivo por motivo de supervisión y

confidencialidad. Sin embargo, la Comisión no atendió el fundamento de confidencialidad y decidió incluirla en la unidad apropiada, basándose solamente en un análisis sobre su carácter de supervisión. La posición del Departamento de Estado era que las funciones del Contador Ejecutivo son similares a la de un Sub-Director, toda vez que supervisa a los Auxiliares de Contabilidad y le asigna trabajo a éstos. No obstante, la Comisión determinó que la supervisión que pudiera ejercer el Contador(a) Ejecutivo era en sustitución del Director de Finanzas. Al evaluar la Especificación de Clase, la Comisión concluyó que de dichas especificaciones no se desprendía que la clase tuviera autoridad y discreción sobre la imposición de medidas disciplinarias o la responsabilidad de habitualmente asignarle trabajo a empleados subalternos, por lo que decidió incluirla en la unidad apropiada.

De igual forma, la Comisión decidió incluir en la unidad apropiada las clases de Oficial de Compras II y Oficial Ejecutivo. En ambos casos concluyó que las supuestas labores de supervisión se limitaban a una colaboración no habitual con otro funcionario de mayor jerarquía que sí ejercía funciones de supervisión. En el primer caso, determinó que el Oficial de Compras II meramente colaboraba en la supervisión ejercida por el Director de Compras. En cuanto a la clase de Oficial Ejecutivo, que incluye varios puestos, en todos la Comisión determinó que las tareas de supervisión no eran más que una colaboración no habitual.

No obstante, el Departamento de Estado, objeta la interpretación del concepto "supervisor" hecha por la Comisión. De acuerdo a su argumentación, el hecho que un empleado sustituya de forma incidental a otro que ejerce funciones de supervisión, hace al primero un supervisor para fines de la Ley para el Servicio Público, *supra*. Sostiene que la clasificación de un puesto es un concepto flexible y no estático y que la Comisión ha incorporado requisitos que no corresponden al texto de la ley. No le asiste la razón.

La Ley para el Servicio Público, *supra*, define "supervisor" de la siguiente forma:

> Cualquier empleado que, ejerciendo su discreción, tenga autoridad para hacer recomendaciones efectivas sobre la imposición de medidas disciplinarias; **o que tenga la responsabilidad habitual de asignar o dirigir el trabajo, si tales responsabilidades surgen de una ley, de un reglamento o de la descripción de deberes de su puesto,** independientemente de que su nombramiento sea uno de carrera, confianza, transitorio, probatorio, provisional, irregular, por jornal o por contrato. (Énfasis suplido), 3 L.P.R.A. Sec. 1451b(dd).

El propio texto de la ley nos permite identificar varios elementos esenciales de la definición de "supervisor." En primer lugar, la ley es clara al extender la definición de "supervisor" a empleados que tienen discreción para recomendar acciones disciplinarias y responsabilidad habitual de asignar y dirigir el trabajo. Por otro lado, se colige que dichas responsabilidades deben surgir de la propia descripción del puesto.

En reiteradas ocasiones hemos expresado que cuando la ley es clara y libre de ambigüedad, debe aplicarse tal como

la misma rece, sin que pueda válidamente menospreciarse su letra so pretexto de cumplir su espíritu o de alguna forma buscar la intensión legislativa fuera del propio texto de la ley. Esto es así, ya que cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Véase Romero Barceló v. Estado Libre Asociado de Puerto Rico, res. el 10 de noviembre de 2006, 2006 T.S.P.R. 163; Ortiz López v. Mun. de San Juan, res. el 20 de abril de 2006, 2006 T.S.P.R. 64; Departamento de Hacienda v. Telefónica Larga Distancia de Puerto Rico, res. el 17 de marzo de 2005, 2005 T.S.P.R. 32.

De conformidad con ello, no podemos pasar por alto que el legislador dispuso expresamente y sin lugar a duda que el concepto "supervisor" se aplica a empleados que realizan la labor de supervisión de manera habitual y no ocasional o accidentalmente. A su vez, nada en el texto de la ley sugiere que debamos dar otra interpretación a la misma. Por tanto, no tenemos duda que, tal como resuelve la Comisión, al definir "supervisor" la ley se refiere a aquellos empleados que al ejercer su discreción tienen autoridad para hacer recomendaciones sobre la imposición de medidas disciplinarias o que tienen la responsabilidad de asignar o dirigir el trabajo de forma habitual y no incidental. Por tal razón, corresponde sostener la interpretación hecha por la Comisión con respecto al concepto "supervisor."

B

Pasemos ahora a examinar el señalamiento del Departamento de Estado en cuanto a la interpretación del concepto "empleado confidencial". Al evaluar la solicitud del Departamento de Estado para la exclusión de varios puestos de la unidad apropiada por entender que eran "empleados confidenciales," la Comisión optó por hacer una interpretación restrictiva de dicho concepto. En particular, limitó la definición de conflicto de interés al que hace referencia la ley, exclusivamente a conflicto de interés en el contexto de las relaciones obrero-patronales o de funciones al formular o implantar la política pública de la agencia. La Comisión hizo esta interpretación basándose en la jurisprudencia desarrollada sobre dicho concepto por la Junta de Relaciones del Trabajo y este Tribunal en el contexto de la Ley Núm. 130, Ley de Relaciones del Trabajo, *supra*, que limita su aplicación a empleados vinculados a la política laboral de la empresa. Erró la Comisión al así proceder.

La Ley Núm. 130, Ley de Relaciones del Trabajo, *supra*, concedió a los trabajadores de las instrumentalidades corporativas del gobierno que se dediquen o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario, el derecho a organizar sindicatos y a negociar colectivamente. Sin embargo, dicha Ley no otorgó estos derechos a los empleados del gobierno central y de los municipios. Para atender la situación de estos últimos, se aprobó la ley cuya interpretación nos

ocupa, es decir, la Ley para el Servicio Público. Véase la Exposición de Motivos de la Ley Núm. 45, *supra*.

En cuanto a la determinación de unidades apropiadas, la Ley de Relaciones del Trabajo, *supra*, es sumamente parca. Al respecto, la ley solo expresa que "la Junta decidirá en cada caso la unidad apropiada a los fines de la negociación colectiva." Ley Núm. 130, *supra* sec. 66. Esto representa una marcada diferencia con la Ley para el Servicio Público, *supra*, la cual establece unos criterios específicos a ser considerados por la Comisión al determinar las unidades apropiadas.

Más aún, en cuanto a la exclusión del "empleado confidencial", la Ley de Relaciones del Trabajo, *supra*, guarda total silencio. Esto es, dicha ley no contiene ninguna definición de lo que se considera un "empleado confidencial". Es por esto que la definición de "empleado confidencial" desarrollada por nuestra jurisprudencia en el contexto de la Ley de Relaciones del Trabajo, *supra*, fue adoptada de la jurisdicción federal. A su vez, la jurisdicción federal adoptó la exclusión del "empleado confidencial" a base del desarrollo jurisprudencial de la Ley Taft-Hartley, 29 U.S.C. seccs. 141-197. En lo pertinente, dicha doctrina ha establecido que "empleado confidencial" se refiere a aquel empleado que está relacionado con la información y conocimiento sobre las relaciones obrero-patronales y negociación colectiva. Véase Autoridad de Acueductos y Alcantarillados v. Unión de Abogados de la

A.A.A., res. el 11 de diciembre de 2002, 2002 T.S.P.R. 149, Administración de Terrenos v. Unión Independiente de Empleados de la Administración de Terrenos, 149 D.P.R. 65 (1999).

Ha sido la Junta de Relaciones del Trabajo, como agencia encargada de interpretar la Ley Núm. 130, *supra*, quien ha elaborado la definición de "empleado confidencial" adoptada de la jurisdicción federal. En Fábrica de Muebles Dimas, Dec. de la J.R.T. Núm. 134 (1955), se discutió la adopción en Puerto Rico de la definición de "empleado confidencial" desarrollada en la jurisdicción federal en el contexto de la Ley Taft-Hartley, *supra*. La definición adoptada originalmente ha sido ampliada para incluir aquellos empleados que, si bien no son ejecutivos ni supervisores, atienden asuntos confidenciales relativos a la política obrero-patronal, o están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política laboral de una empresa o que tiene acceso y/o conocimiento de ésta. Además, se han incluido empleados que, aun cuando no asisten al personal que realiza funciones empresariales, sí tienen acceso a información confidencial relacionada a posibles cambios que pueden resultar de las negociaciones colectivas. Véase Autoridad de Energía Eléctrica, Dec. de la J.R.T. PC-73 (1984).

A la luz de las marcadas diferencias entre ambas leyes, somos del criterio que resultaría inadecuado aplicar indistintamente la definición de "empleado confidencial" de

la Ley de Relaciones del Trabajo, *supra*, a controversias relacionadas a la Ley para el Servicio Público, *supra*. La definición de "empleado confidencial" que hemos adoptado en el contexto de la Ley de Relaciones del Trabajo, *supra*, tal como hemos mencionado, proviene de la doctrina desarrollada en Estados Unidos con relación a la Ley Taft-Hartley, *supra*. Esta legislación federal gobierna las relaciones obrero-patronales en el sector privado. De igual forma, la Ley de Relaciones del Trabajo, *supra*, cubre a empleados de la empresa privada y de las corporaciones públicas de Puerto Rico. Por su parte, la Ley para el Servicio Público, *supra*, fue creada particularmente para los empleados del gobierno central y los municipios, los cuales no están cubiertos por la Ley de Relaciones del Trabajo, *supra*.

De hecho, nuestro legislador, al reconocer que el gobierno es un patrono particular, quiso legislar una ley separada de la Ley de Relaciones del Trabajo, *supra*, para otorgar el derecho a la negociación colectiva a los empleados del gobierno central. Precisamente, para atender esas particularidades del gobierno como patrono, la Ley para el Servicio Público, *supra*, difiere marcadamente de la Ley de Relaciones del Trabajo, *supra*, en varios aspectos importantes que conviene resaltar.

En primer lugar, mientras que la Ley de Relaciones del Trabajo, *supra*, es parca en cuanto a las determinaciones de unidades apropiadas, limitándose a decir que la Junta hará tal determinación, la Ley para el Servicio Público, *supra*,

establece unos criterios específicos que deben servir de guía a la Comisión al hacer la determinación de unidad apropiada. **Por otro lado, en lo concerniente al asunto particular del concepto "empleado confidencial," la Ley de Relaciones del Trabajo, *supra*, no lo define. Sin embargo, la Ley para el Servicio Público, *supra*, contiene una definición que no podemos ignorar.**

La Ley para el Servicio Público, *supra*, define "empleado confidencial" como toda persona que tuviera conflicto de intereses o que participe significativamente en la formulación e implantación de política pública o que realice labores directas o indirectas en torno a las relaciones obrero-patronales. Ley Núm. 45, *supra*, sec. 1451ap. Es decir, y según ha expresado la propia Comisión, se consideran empleados confidenciales aquellos empleados que cumplen con alguno de los tres criterios enumerados por la ley. Es decir empleados que:

1. tuvieran conflicto de intereses

2. participen significativamente en la formulación e implantación de política pública.

3. realicen labores directas o indirectas en torno a las relaciones obrero-patronales.

**Como vemos, la Ley para el Servicio Público, supra, no limita su definición de "empleado confidencial" a los asuntos relacionados con la política laboral de la empresa.** En particular, los primeros dos criterios -conflicto de

intereses y formulación e implantación de política pública-no hacen mención de la política laboral. Por ende, el concepto "empleado confidencial" en el contexto de la Ley para el Servicio Público, *supra*, no puede limitarse a lo concerniente a las relaciones obrero-patronales.

Como es sabido, un tribunal no está autorizado, bajo el pretexto de buscar la intención legislativa en un estatuto, a adicionarle limitaciones o restricciones que no surgen de su texto. José R. Cancio González, Ex Parte, res. el 29 de marzo de 2004, 2004 T.S.P.R. 45; Zahira Linette Martínez Vázquez v. Nelson Rodríguez, res. el 13 de agosto de 2003, 2003 T.S.P.R. 134; Comité Pro Permanencia de la Barriada Morales v. Hon. William Miranda Marin, res. el 16 de octubre de 2002, 2002 T.S.P.R. 138. Tampoco puede un tribunal eliminar mediante legislación judicial cualquier parte de una ley, no importa cuál pueda ser la opinión del tribunal respecto a la conveniencia de la misma. Arturo Guzmán Vargas v. Hon. Sila M. Calderón, res. el 23 de marzo de 2005, 2005 T.S.P.R. 33; Luis Oliver Canabal v. Comisión Estatal de Elecciones, res. el 30 de junio de 2004, 2004 T.S.P.R. 112; Parilla v. Loíza Sugar Co., 49 D.P.R. 597, 600 (1935).

Conforme a dichos principios, no podemos ignorar la definición de "empleado confidencial" contenida en el propio texto de la Ley para el Servicio Público, *supra*, y utilizar la definición que para fines de la Ley de Relaciones del Trabajo, *supra*, hemos adoptado de la Ley Taft-Hartley, *supra*. De un análisis del historial legislativo, resulta evidente

que el legislador quiso evitar cualquier referencia a la Ley Taft-Hartley, *supra*, en el contexto de la Ley para el Servicio Público, *supra*. La Exposición de Motivos del proyecto original (P. del S. 1000) presentado durante la 12ma Asamblea Legislativa, con el fin de otorgar el derecho a la sindicalización a los empleados del sector público no cubiertos por la Ley de Relaciones del Trabajo, *supra*, y que inspiró la nueva Ley para el Servicio Público, *supra*, hacía mención de la Ley Taft-Hartley, *supra*, de 1947.[2] Sin embargo, la Asamblea Legislativa eliminó del texto del P. del S. 813 –que finalmente se convirtió en la Ley para el Servicio Público, *supra*,– toda referencia a la mencionada legislación federal. De hecho, la Exposición de Motivos del P. del S. 813 y la propia Ley para el Servicio Público, *supra*, es casi idéntica a la Exposición de Motivos del P. del S. 1000, con la excepción que se eliminó toda referencia a la Ley Taft-Hartley, *supra*.

La diferencia entre ambas leyes ha sido reconocida tanto por la propia Comisión mediante sus resoluciones como por este Tribunal. En el caso de <u>Departamento de Educación y Sindical Asociación de Maestros de Puerto Rico et al</u>, la Comisión expresó:

> A diferencia de la Ley Taft-Hartley y la Ley [Núm.] 130 de 1945 donde los empleados

---

[2] Este proyecto no fue aprobado en la 12ma Asamblea Legislativa y fue presentado nuevamente en la 13ra Asamblea Legislativa como el P. del S. 813, que eventualmente fue aprobado convirtiéndose en la Ley Núm. 45 de 25 de febrero, 1998, 3 L.P.R.A. sec. 1451 y ss., conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico.

confidenciales se excluyen por razones jurisprudenciales y donde la Ley no define qué se considera un empleado confidencial, nuestra Ley específicamente excluye estos empleados y define en qué consisten los mismos.[3]

De igual forma, este Tribunal se ha expresado sobre las antes mencionadas diferencias entre la Ley de Relaciones del Trabajo, *supra,* y la Ley para el Servicio Público, *supra.* Al determinar el carácter revisable de las determinaciones de unidad apropiada bajo la Ley para el Servicio Público, *supra,* rechazamos aplicar por analogía la limitación que para dichas revisiones contiene la Ley de Relaciones del Trabajo, *supra.* Sobre el particular sostuvimos: "En vista de que la Ley Núm. 45, ante, no contiene una limitación análoga a la de la Ley de Relaciones del Trabajo en cuanto al ámbito de revisión judicial, establecimos que no procedía aplicar, por analogía, la misma a un caso efectuado ante la Comisión." (Énfasis en el original) Véase Departamento de Educación v. Sindicato Puertorriqueño de Maestros, res. el 13 de junio de 2006, 2006 T.S.P.R. 121, citando a A.R.P.E. v. Coordinadora Unitaria de Trabajadores del Estado, res. el 19 de octubre de 2005, 2005 T.S.P.R. 147.

Además de reconocer las marcadas diferencias entre ambas leyes, este Tribunal ha reconocido el derecho de Puerto Rico de desarrollar nuestra propia política pública en un sinnúmero de áreas del derecho laboral, como podrían ser aquellas cubiertas por la Ley para el Servicio Público,

---

[3] Departamento de Educación y Sindical Asociación de Maestros de Puerto Rico et al, DD-99-001(26 de marzo de 1999).

*supra*. Al resolver que la sección 301 de la Ley Taft-Hartley, *supra*, ocupa el campo en cuanto a las pruebas de detección de sustancias controladas en la empresa privada, detallamos los pasos a seguir para determinar cuándo la ley estatal queda desplazada o no por la mencionada legislación federal. Véase Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino de Puerto Rico, 149 D.P.R. 347 (1999). Sin dudas, en áreas no ocupadas por la legislación federal, Puerto Rico puede desarrollar su propia política pública.[4]

Sobre el caso Condado Plaza & Casino v. Asociación de Empleados de Casino de Puerto Rico, *supra*, se ha expresado:

> El mayor significado de este caso son las implicaciones al poder de Puerto Rico sobre su propia política pública. **Aunque las normas federales son obligatorias en la esfera ocupada por la Sección 301, en cuanto a la no ocupada Puerto Rico tiene pleno poder para desarrollar una política pública según su mejor juicio; por ejemplo, con respecto a las corporaciones públicas y en la implantación de la nueva Ley de Relaciones del Trabajo para el Servicio Público aprobada en el 1998.**[5] (Énfasis suplido)

A la luz de la intención legislativa al aprobar la Ley para el Servicio Público, *supra*, y de los pronunciamientos de este Tribunal en Condado Plaza Hotel y Casino v. Asociación de Empleados de Casino de Puerto Rico, *supra*, somos del

---

[4] Este Tribunal ha expresado que lo importante para saber si alguna ley estatal se encuentra desplazada por la Sec. 301 de la Ley Taft-Hartley, es determinar si para resolver la acción que surge de la ley estatal es necesario interpretar el convenio colectivo. Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino de Puerto Rico, 140 D.P.R. 347, 358 (1999), citando a Lingle v. Norge Division of Magic Chef, Inc. 486 U.S. 399 (1988).

[5] David M. Helfeld, Derecho Laboral, Revista Jurídica de la Universidad de Puerto Rico, 70 Rev. Jur. U.P.R. 447, 452 (2001).

criterio que la definición de "empleado confidencial" no puede estar basada en la definición desarrollada en la esfera federal en el contexto de la Ley Taft-Hartley, *supra*.[6] **Esta interpretación restrictiva, tendría el efecto de dejar fuera de la definición a aquellas personas que participan significativamente en la formulación e implantación de la política pública general de la empresa, contrario al propio texto de la Ley para el Servicio Público, *supra*.**

Además, debemos señalar que la definición de "empleado confidencial" adoptada originalmente en el contexto de la Ley de Relaciones del Trabajo, *supra*, ha sido ampliada para incluir, no sólo a empleados que realizan tareas confidenciales relacionadas con la política laboral de la agencia, sino también a aquellos que están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política laboral de una empresa, o que tienen acceso y/o conocimiento de ésta. Véase <u>Autoridad de Energía Eléctrica</u>, *supra*. **Entendemos que, de la misma forma, la definición de "empleado confidencial" bajo la Ley para el Servicio Público, supra, se debe extender a aquellos empleados que están en una relación de confidencialidad con los que formulan o implantan la política pública general de**

---

[6] De hecho, al revisar otra legislación sobre sindicalización de empleados públicos aprobada en varios estados, hemos notado que al definir "empleado confidencial", no todos los estados han seguido el lenguaje de la Ley Taft-Hartley de la jurisdicción federal. Hemos encontrado un lenguaje distinto al lenguaje de la Ley Taft en la legislación de estados tales como New Mexico, N.M. Stat. Ann. § 10-7E-4 (2007); New Hampshire, RSA-273-A:1 (2007); California, Cal Gov. Code § 3513 (2007); Massachusetts, ALM GL Ch. 150E, § 1; y Florida, Fla. Stat. § 447.203 (2007).

**la agencia o que tienen acceso y/o conocimiento de ésta**. Creemos que esta definición se ajusta adecuadamente al texto de la Ley para el Servicio Público, *supra*, y cumple a cabalidad con la intención legislativa de brindar a los empleados del gobierno central y los municipios el derecho a la negociación colectiva dentro de unos parámetros que respondan a las particularidades del gobierno como patrono.

Reconocemos que la Comisión, tanto en la determinación de unidad apropiada en controversia, como en resoluciones anteriores, ha intentado elaborar una definición que incluya a ciertos empleados que- si bien no participan directamente en la formulación o implantación de la política pública general de la empresa- mantienen una relación de confidencialidad con los que la formulan e implantan. Sin embargo, notamos que la Comisión no ha aplicado la norma uniformemente y en ocasiones su análisis demuestra un apego innecesario a la doctrina desarrollada en el contexto de la Ley de Relaciones del Trabajo, *supra*. Así se desprende de un análisis somero de algunos puestos, como los que se encuentran bajo la supervisión de la Secretaría Auxiliar de Relaciones Exteriores del Departamento de Estado.

Según el organigrama del Departamento de Estado, la misión principal de esta Secretaría Auxiliar es implantar la política pública de internacionalización de Puerto Rico. No obstante, en su determinación, la Comisión decide excluir varios de estos puestos y otros no. En particular, la Comisión se negó a excluir todos los puestos pertenecientes a

la clase de Oficial de Asuntos Internacionales. La Comisión fundamentó su negativa a excluir esta clase alegando que sus tareas se limitan a coordinar eventos y actividades culturales y coordinar las estadías de funcionarios y no en lo relacionado a la implantación de política pública. Sin embargo, de las descripciones de los puestos se desprende que algunos de estos empleados redactan documentos oficiales que incluyen cartas, informes y recomendaciones para la firma del Secretario de Estado, Subsecretario de Estado y el Secretario Auxiliar. Además, participan en viajes oficiales con funcionarios del gobierno de Puerto Rico y en conferencias representando al negociado o al Secretario Auxiliar según éste determine y asigne.

Tras analizar las descripciones de los puestos, concluimos que estos empleados están en una relación de confidencialidad con los que formulan o implantan la política pública general del Departamento de Estado o tienen acceso y/o conocimiento de la misma. Por tanto, resolvemos que erró la Comisión al no excluir esta clase.

Igual curso de acción se impone, por ejemplo, con el puesto de Contador Ejecutivo. Aunque la Comisión concluye correctamente que no se trata de un supervisor para fines de la Ley para el Servicio Público, *supra*, lo cierto es que no atendió el planteamiento que hizo el Departamento de Estado sobre el alegado carácter confidencial de este puesto. Entre las tareas del Contador Ejecutivo están el preparar los estados financieros de las diferentes asignaciones estatales,

colaborar con la División de Presupuesto en la formulación del presupuesto de la Agencia, sustituir al director de Finanzas en su ausencia y representarlo en las actividades cuando lo requiera. De igual forma, este funcionario prepara las obligaciones de fondos al cierre del año fiscal de las asignaciones estatales para los diferentes programas. Resolvemos que se trata de un empleado confidencial de acuerdo a la definición contenida en la Ley para el Servicio Público, *supra,* por lo que debió ser excluido de la unidad apropiada. Este análisis lo hacemos a manera de ilustración, por lo que no debe entenderse que el mismo se limita a las clases específicamente mencionadas. Por el contrario, la norma aquí establecida debe ser aplicada a todos los puestos en controversia.

Finalmente, es importante señalar que hasta este momento, al interpretar la Ley para el Servicio Público, *supra*, hemos seguido las interpretaciones y decisiones de la Junta de Relaciones del Trabajo, entidad creada a la luz de la Ley de Relaciones del Trabajo, *supra*. No obstante, fue la Comisión de Relaciones del Trabajo la agencia creada por ley para implantar e interpretar la Ley para el Servicio Público, *supra*. Consideramos que si bien la Comisión puede usar como guía o referencia las interpretaciones de la Junta sobre la Ley de Relaciones del Trabajo, *supra*, debemos reconocer que se trata de leyes distintas, dirigidas a patronos y empleados distintos, por lo que existen ciertas áreas donde, al interpretar la Ley para el Servicio Público, *supra*, la

Comisión debe desarrollar su propia interpretación sin necesidad de sujetarse de forma absoluta a las interpretaciones que la Junta de Relaciones del Trabajo ha hecho de su propia Ley.

IV.

Por los fundamentos que anteceden, procede confirmar en parte la sentencia del Tribunal de Apelaciones, Región de San Juan, a los efectos de sostener la interpretación del concepto "supervisor" hecha por la Comisión y revocar en parte en cuanto a la interpretación de "empleado confidencial." Se devuelve el caso para que la Comisión evalúe nuevamente los puestos impugnados conforme a la definición de "empleado confidencial" esbozada en esta Opinión. Se dictará sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Estado

   Peticionario

        v.                    CC-2006-177     Certiorari

Unión General de Trabajadores
(División de Empleados
Públicos)

   Recurrida

SENTENCIA

San Juan, Puerto Rico a 13 de febrero de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma en parte la sentencia del Tribunal de Apelaciones, Región de San Juan, a los efectos de sostener la interpretación del concepto "supervisor" hecha por la Comisión y revocar en parte en cuanto a la interpretación de "empleado confidencial." Se devuelve el caso para que la Comisión evalúe nuevamente los puestos impugnados conforme a la definición de "empleado confidencial" esbozada en esta Opinión.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo