# 2009 DTA 89

## TRIBUNAL DE APELACIONES
## REGIÓN JUDICIAL DE ARECIBO

EFRAÍN VÁZQUEZ COLÓN
Recurrente

v.

AUTOS DEL CARIBE, MITSUBISHI SALES OF CARIBBEAN, SCOTIABANK DE PR
Recurridos

Núm. KLRA-2009-00212

San Juan, Puerto Rico, a 10 de junio de 2009

Panel integrado por su Presidente, el Juez Escribano Medina,
y los Jueces Aponte Hernández y Miranda De Hostos

### TEXTO COMPLETO DE LA SENTENCIA

Comparece el recurrente, Efraín Vázquez Colón, y solicita la revocación de una resolución del Departamento de Asuntos del Consumidor (D.A.CO.) el 9 de diciembre de 2008, notificada el 26 de enero de

2009. En la misma, el D.A.C.O. ordenó a Mitsubishi Motors la reparación del vehículo del recurrente.

## I

El 18 de enero de 2008 el recurrente presentó una querella en el Departamento de Asuntos del Consumidor contra Autos del Caribe, Mitsubishi Motors Sales of Caribbean Inc. y Scotiabank. Allí alegó el recurrente, en esencia, que en febrero de 2007, del vehículo objeto de la querella comenzó a confrontar problemas mecánicos graves entre los que mencionó: liqueo de aceite en el "power steering", vehículo hace ruido al girar gomas, vehículo desgasta las gomas delanteras prematuramente debido a los desperfectos del sistema de "power steering". Dicho vehículo fue adquirido por el recurrente en el 2005.

El 16 de octubre de 2008 se celebró vista administrativa ante D.A.C.O. a la cual compareció el recurrente, Autos del Caribe, ScotiaBank y Mitsubishi Motors representados todos por abogados. También compareció el señor René Soto González como Gerente de Servicios de Autos del Caribe y señor Jesús Santos como técnico automotriz de Mitsubishi Motors.

Luego de celebrada la vista y sometida la evidencia en el caso, el D.A.C.O. formuló las siguientes determinaciones de hechos:

"1. El 9 de abril de 2005, el querellante adquirió mediante compraventa del concesionario co-querellado Autos del Caribe un vehículo de motor marca Hyundai, modelo Santa Fe de 2005 nuevo, VIN Number KM8SB13D15U93692, por un precio de $22,995.00.

2. Al momento de la adquisición del vehículo, la parte querellante entregó en "trade in" un vehículo Hyundai del año 2000 para el cual recibió $3,800 que fueron acreditados a la compra y financiamiento del vehículo objeto de la presente querella.

3. El co-querellado Scotiabank de Puerto Rico le brindó el financiamiento al vehículo en controversia.

4. El 17 de octubre de 2007, la parte querellante le notificó a la co-querellada Scotiabank de Puerto Rico los problemas de su vehículo de motor por correo certificado con acuse de recibo según los requisitos de la Ley de Ventas a Plazo y Compañías de Financiamiento.

5. El febrero de 2007, comenzó el vehículo de motor del querellante a confrontar problemas mecánicos con liqueo de aceite de "power steering".

6. El 21 de febrero de 2007, el querellante llevó su vehículo de motor a Autos del Caribe para un servicio de garantía. El querellante informó que el vehículo liquea aceite del "power steering". Para esa fecha, el vehículo de motor del querellante tenía 25, 042 millas recorridas.

7. El 28 de febrero de 2007, el querellante llevó su vehículo de motor a Autos del Caribe. El querellante informó que el vehículo tiene liqueo de "power steering". Autos del Caribe procedió a pedir la bomba del "power steering". Para esta fecha el vehículo tenía 25,294 millas recorridas.

8. El 19 de marzo de 2007, el querellante llevó su vehículo de motor a Autos del Caribe. El querellante informó que el vehículo bota el líquido del "power steering". Autos del Caribe procedió a reemplazar la bomba del "power steering". Para esa fecha el vehículo tenía 25,679 millas.

9. El 26 de marzo de 2007, el querellante lleva su vehículo de motor a Autos del Caribe. El querellante informó que el vehículo bota el líquido del "power steering". Autos del Caribe procedió a pedir la pieza del "rack and piñon". Para esta fecha, el vehículo tenía 26,030 millas recorridas.

10. El 6 de junio de 2007, el querellante llevó su vehículo de motor a Autos del Caribe. El querellante informó liqueo de aceite del "power steering" y hace ruido al girar. Autos del Caribe procedió a reemplazar el "rack and piñon". Para esta fecha el vehículo de motor había recorrido 28,209 millas.

11. El 9 de agosto de 2007, el querellante llevó su vehículo de motor a Autos del Caribe. El querellante informó liqueo de aceite de "power steering" por canister de bomba. Autos del Caribe procedió a ordenar la manga de presión y retorno. Se reemplazó las mangas de presión del "power steering". Para esta fecha, el vehículo había recorrido 29,746 millas.

12. El 3 de septiembre de 2007, el querellante llevó su vehículo de motor a Autos del Caribe. El querellante informó liqueo de aceite de "power steering". Se encontró abrazaderas de la manga del recipiente del líquido de "power steering". Se reemplazaron abrazaderas de las mangas del recipiente de "power steering". Para esta fecha, el vehículo de motor del querellante había recorrido 31,033 millas.

13. El 2 de octubre de 2007, el querellante llevó su vehículo de motor a Autos del Caribe. El querellante informó liqueo de aceite de "power steering". Autos del Caribe procedió a verificar la unidad y se encontró que la unidad no estaba sangrada incorrectamente, encontrando que tenía aire en el sistema provocando que se perdiera el aceite del área del embase. Se realizó sangrado al sistema de "power steering". Para esta fecha, el vehículo de motor del querellante tenía 31, 728 millas recorridas.

14. El 18 de enero de 2008, el querellante radicó una querella en el Departamento.

15. El 17 de marzo de 2008 tuvo lugar la inspección conjunta del vehículo de motor del querellante por el Técnico Automotriz del Departamento Edgar Cotto…Para esta fecha, el vehículo tenía 37,398 millas recorridas. La prueba de carretera se realizó en carretera urbana, carretera rural, curvas y pendientes.

16. El Técnico Automotriz del Departamento, Edgar Cotto encontró que el vehículo continúa con fuga de aceite por el depósito y ruido en la bomba del "power steering".

17. El Técnico Automotriz del Departamento, Edgar Cotto recomendó cambiar todo el sistema de "power steering" completo y sus componentes.

18. El Técnico Automotriz del Departamento declaró en la vista que si un vehículo de motor se le sigue "echando" aceite va a continuar funcionando hasta que se repare el sistema de "power steering". También declaró que un vehículo con liqueo de aceite de "power steering" hay que "echarle" con más frecuencia aceite de "power steering" para que el "power steering" funcione.

19. El Técnico Automotriz del Departamento declaró que si se reemplaza el sistema de "power steering" completo, el problema del vehículo debe desaparecer.

20. El 1 de agosto de 2008, Mitsubishi Motors presentó en el Departamento una Contestación a Querella.

21. El concesionario co-querellado Autos del Caribe le cambió la bomba del "power steering".

22. Según el Manual de Garantía de Hyundai establece que en caso de que un consumidor no esté satisfecho con el servicio de garantía ofrecido por un concesionario autorizado de Hyundai debe llamar o escribir a Mitsubishi Motors.

23. El querellante no se comunicó ni escribió a Mitsubishi Motors, fabricante del vehículo Hyundai.

24. Los servicios de garantía del vehículo de motor del querellante en Autos del Caribe han consistido en dos pedidos de piezas y seis reparaciones en garantía.

25. El concesionario Autos del Caribe no le negó al querellante el servicio de garantía. Autos del Caribe no le cobró al querellante por los servicios en garantía brindados al querellante.

26. Mitsubishi Motors solicitó la oportunidad de reparar el vehículo de motor del querellante y proveer transportación durante el tiempo que demore la reparación."

Finalmente, el D.A.C.O. determinó que el hecho de que el vehículo tenga un liqueo de aceite del "power steering" no impide el funcionamiento del vehículo, además de que Mitsubishi Motors está en la disposición de cambiarle al recurrente todo el sistema de "power steering" y sus componentes conforme a la recomendación del Técnico Automotriz del Departamento. Señaló, además, que el vehículo ha recorrido más de 1,000 millas mensuales, lo cual es un uso normal, por lo que el vehículo ha servido al propósito por el cual fue adquirido.

El D.A.C.O. desestimó la querella contra Scotiabank y ordenó a Mitsubishi Motors a que dentro de 30 días luego de que el recurrente lleve su vehículo a Autos del Caribe, le cambie todo el sistema de "power steering" y sus componentes. Además, ordenó a Autos del Caribe que le prestara al recurrente un vehículo similar al Hyundai Santa Fe durante el tiempo que dure la reparación.

Inconforme, la parte recurrente acudió ante nos y señaló la comisión de los siguientes errores por el D.A.C.O.

" Erró al emitir determinaciones de hechos, así como conclusiones de derecho, que no se ajustan a la evidencia admitida durante la vista administrativa, formulando así una determinación irrazonable que no se encuentra sostenida por la evidencia sustancial que obra en el expediente administrativo.

Erró al emitir determinaciones de hechos que son contrarias al derecho aplicable.

Erró al concluir que el vehículo objeto del presente pleito ha servido el propósito por el cual fue adquirido basándose exclusivamente en el millaje total del vehículo y obviando las demás pruebas en contrario que obra en el expediente administrativo.

Erró al emitir un dictamen que no sólo es totalmente contrario al derecho aplicable, sino también totalmente contrario a la doctrina jurisprudencial aplicable a reclamaciones de saneamiento por vicios ocultos e incumplimiento de contrato de garantía de vehículos de motor."

**II**

La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2171, permite que se solicite al Tribunal de Apelaciones la revisión de decisiones administrativas. Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. *Vélez Rodríguez v. ARPE*, 167 D.P.R. 684 (2006). Debemos ser cautelosos al intervenir con las determinaciones administrativas, debido a que las agencias poseen la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. 69 (2004). Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. *A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones*, 124 D.P.R. 858, 864 (1989).

La deferencia judicial en la revisión de las determinaciones administrativas no conlleva la renuncia de los tribunales a su función revisora. Tan sólo implica que dicha función es de carácter limitado, la cual sólo se

ejercerá en los casos apropiados. Tal intervención sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, cuando la determinación no se sostenga mediante prueba sustancial o cuando se haya cometido un error en la aplicación de la ley. *Fuertes v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

Cuando obre en el expediente administrativo evidencia sustancial que haya sido considerada en su totalidad, los tribunales apelativos debemos confirmar las determinaciones de hechos realizadas por la agencia. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70, 75 (2000). Nuestro Tribunal Supremo ha definido la evidencia sustancial como evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión, aunque exista prueba conflictiva de la cual puedan inferirse conclusiones distintas a las que la agencia adopta. *Adm. de Terrenos v. U.I.E.A.T.,* 149 D.P.R. 65, 75-76 (1999).

De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraria, irrazonable y que se tomó en ausencia de evidencia sustancial. Tiene la obligación de refutar la presunción de corrección sin descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. Junta de Planificación,* 147 D.P.R. 750, 761 (1999).

## Acción Redhibitoria

El Artículo 1350 del Código Civil, 31 L.P.R.A. sec. 3801, dispone que el vendedor de un bien mueble o inmueble tiene la obligación de entrega y saneamiento de la cosa vendida. Es decir, que no sólo tiene que entregar la cosa, sino que tiene que garantizar al comprador la posesión pacífica y útil de la misma. El Artículo 1373 del Código Civil, 31 L.P.R.A. sec. 3831, por su parte, establece dos facetas del saneamiento de la cosa como parte del deber de garantía. Estas son, saneamiento por evicción (perturbación jurídica del derecho dominical adquirido) y saneamiento por vicios ocultos (perturbación económica de la posesión de la cosa).

El saneamiento por vicios ocultos, también conocida como la redhibición, se produce cuando, "después de verificada la entrega, se observa en la cosa vendida vicios ocultos que la hacen impropia para los usos a que se destina o disminuyen de tal modo su utilidad que, de haberlos conocidos el comprador, no la hubiese adquirido o habría dado menos precio por ella." *Domínguez Talavera v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387 (1999).

La procedencia de una acción redhibitoria depende de la coincidencia de los siguientes requisitos: (1) no deben ser conocidos por el adquirente; (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella; (3) que sea preexistente a la venta y (4) que se ejercite la acción en el plazo legal, que es el de seis (6) meses contados desde la entrega de la cosa vendida.

A la luz de lo anterior, el Tribunal Supremo sostuvo lo siguiente en *García Reyes v. Cruz Auto Corp.* 2008 T.S.P.R. 92, citando a *Ford Motor Co. v. Benet,* 106 D.P.R. 232, 238 (1977):

"Para llevar a cabo la acción redhibitoria por vicios ocultos en autos defectuosos, la jurisprudencia ha establecido que solamente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió.

En el caso antes mencionado, el Tribunal Supremo reafirmó que no constituyen vicios redhibitorios o cuantiminosos los defectos "que no exceden de la medida de las imperfecciones menores que cabe esperar normalmente en un producto determinado. Asimismo hemos resuelto que no se requiere que el defecto imposibilite el uso de la cosa; basta con que merme notablemente su valor. *DACO v. Marcelino Mercury,* 105

D.P.R. 80 (1976)."

A los fines de resolver la procedencia de la acción redhibitoria, el Tribunal Supremo ha adoptado que el criterio de que la apreciación de la importancia de los defectos, es esencialmente una cuestión de hecho, por lo que el foro de instancia está en mejor posición para hacer esta apreciación que los foros apelativos. Por lo tanto, se justifica la intervención del foro apelativo con la discreción del juzgador sólo en aquellos casos en que se demuestre ausencia de prueba adecuada o error manifiesto en su apreciación. *García Viera v. Ciudad Chevrolet, Inc.*, 110 D.P.R. 158 (1980).

## Reglamento de Garantías de Vehículos de Motor

Por otro lado, la Ley Núm. 7 del 24 de septiembre de 1979, conocida como Ley de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2051 et seq., según enmendada, fue creada con el propósito de "velar porque los intereses de los consumidores sean salvaguardados frente a los intereses del manufacturero y el distribuidor o vendedor". Art. 33 de la Ley Núm. 7 de septiembre 24 del 1979, 10 L.P.R.A. sec. 2053. Esta ley, en su artículo 13 faculta al DACO para adoptar reglamentos que implanten los propósitos de dicha ley. La Regla 22 del Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 6 de julio de 2006, que sustituyó al Reglamento 4797, creado en virtud de esta facultad, establece lo siguiente:

## "REGLA 22: OPORTUNIDAD RAZONABLE PARA REPARAR DEFECTOS EN LOS VEHÍCULOS DE MOTOR NUEVOS

El Departamento podrá, a opción del comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable para reparar se determinará tomando en consideración las circunstancias particulares de cada caso."

Por otro lado, la Regla 37 del Reglamento dispone lo siguiente con respecto a los derechos del consumidor:

## "REGLA 37: DERECHOS DEL CONSUMIDOR

Nada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos o redhibitoria y cualesquiera otras que reconozca el Código Civil de Puerto Rico."

### III

En esencia, alega el recurrente que erró el D.A.C.O. al hacer determinaciones que no están sostenidas por el expediente y que son contrarias al derecho aplicable. Según las determinaciones de hechos del D.A.C.O., el recurrente acudió en varias ocasiones al concesionario para corregir el defecto del "power steering" que presentaba su vehículo luego de dos años de haberlo adquirido. Sin embargo, dicho defecto no pudo ser corregido por el concesionario. Determinó, sin embargo, el D.A.C.O., que dicho defecto no ha impedido el funcionamiento del vehículo y éste ha servido el propósito por el cual fue adquirido, en vista de las millas recorridas antes y después de que presentara la dificultad con el sistema de "power steering". Un cálculo de dicho factor nos obliga a concluir, contrario lo que trata de establecer el recurrente, que el millaje mensual, antes y después de que el vehículo exhibiera el defecto, no presenta una diferencia sustancial. Dicha apreciación del defecto goza de nuestra deferencia al foro administrativo, toda vez que no se justifica nuestra intervención, toda vez que existe prueba adecuada y no hay error manifiesto en la apreciación del foro administrativo.

Por otro lado, según el ordenamiento vigente, para que proceda una acción redhibitoria como la que pretende sostener el recurrente, es necesario que el comprador pruebe que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió. A la luz de lo anterior, debemos concluir que el recurrente no cumplió con dichos requisitos. Surge del expediente ante nos que el recurrente no ofreció oportunidad al fabricante para arreglar el defecto, conforme lo establecían las cláusulas del manual de garantía ofrecido por la parte recurrida, por lo que no quedó establecido que el vendedor tuvo la oportunidad de corregir los defectos, y no pudo. El recurrente alegó que haber acudido en ocho ocasiones sin que el concesionario hubiese arreglado el fallo, constituye oportunidad razonable para corregir el defecto. Sin embargo, según establece el Reglamento de Garantías de Vehículos de Motor lo que constituye oportunidad razonable para reparar se determinará considerando las circunstancias particulares de cada caso. Consideramos que el D.A.C.O. se encuentra en una mejor posición en la tarea de determinar dicha razonabilidad, y considerando el hecho mencionado de que el recurrente no llevó su auto donde el fabricante conforme lo establecía el manual de garantía, ordenó la reparación.

Sólo procede la intervención de los tribunales cuando la agencia haya obrado de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, o cuando la determinación no se sostenga mediante prueba sustancial, o cuando se haya cometido un error en la aplicación de la ley. Dichos factores no están presentes en este caso.

En virtud de lo anterior, resolvemos que el remedio otorgado por el D.A.C.O. es conforme al derecho vigente y las determinaciones están sostenidas por el expediente administrativo.

**IV**

Por todo lo anterior, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la señora Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones